ROGER ALLEN JASKE *v.* STATE OF INDIANA.

[No. 677S473. Filed August 15, 1978.]

*Douglas M. Grimes, Thomas V. Barnes,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *David Michael Wallman,* Deputy Attorney General, for appellee.

PIVARNIK, J.—On December 9, 1976, appellant Jaske was found guilty by a jury in the St. Joseph Superior Court of murder in the first-degree, and sentenced to a term of life imprisonment by the court.

On the evening of April 22, 1975, appellant and decedent, Jeffrey Allen Harmon, were driving around in appellant's automobile when Harmon became angry because Jaske refused to loan him his automobile. A struggle ensued, at which time appellant claims that Harmon drew a knife. Jaske then obtained the knife and stabbed Harmon in the side. The struggle continued and appellant pushed Harmon out of the car and followed him on to the ground where he choked him. Jaske then took the body to a wooded area and left it. As appellant was driving away, he changed his mind and returned to the body to remove some ropes he had used to tie the deceased. He noticed that Harmon began to move, so he stabbed him several more times with the knife. He then discarded the knife in a nearby field and took the deceased's wallet so that it would appear to be a robbery.

Appellant raises three issues for our review. These issues concern: (1) whether the videotaped recording of a statement given by the appellant was unlawfully obtained and therefore inadmissible at trial even though a waiver of personal rights was executed by appellant; (2) whether the jury verdict was

supported by substantial evidence of probative value on each element of the crime charged, including, but not limited to the cause of death of the victim, and; (3) whether the cumulative effect of the trial court's behavior deprived appellant of a fair trial and therefore constituted reversible error.

## I.

Appellant Jaske first asserts that the trial court erred in denying his Motion to Suppress a videotaped recording of a statement he made, which he claims was obtained unlawfully. The appellant's basis for suppression of the statement is that he was allegedly held incommunicado by police prior to the taping of the confession. The record shows that when Jaske was booked by the police at 6:00 a.m. on April 25, 1975, he stated to Sheriff Nickel that he wanted to talk wth a Mrs. Coombs. Mrs. Coombs was the appellant's landlady, and a person who he considered a friend. He stated that he wanted to tell her about his involvement in this matter before she heard about it on the news. The sheriff told him that she would probably be asleep, that the news would not come out until much later in the day, and that he would see to it that Jaske would get to talk to Mrs. Coombs later in the morning. Jaske then assisted police in recovering the victim's wallet, and was transported to Mrs. Coomb's home. After speaking with Mrs. Coombs, the appellant was returned to the sheriff's office where he was advised of his rights, executed a waiver, and made an oral statement which was videotaped.

Appellant filed a Motion to Suppress this videotaped statement before the trial court, and after a hearing the court denied this motion. The transcript of this hearing and ruling by the court is not included in the record before us. It is incumbent upon the appellant to present a sufficient record to permit an intelligent review of the issues, and the failure of the appellant to so include the transcript in this case is a waiver of this issue. *State v. Brown,* (1975) 263 Ind. 77, 324 N.E.2d 266; *State v. Irwin,*

(1973) 259 Ind. 610, 291 N.E.2d 70; *Dunbar* v. *State*, (1974) 160 Ind. App. 226, 311 N.E.2d 447.

In examining the record, it is clear that the appellant did, in fact, receive his warning of personal rights, commonly called the *Miranda* rights warnings, and voluntarily waived and acknowledged his understanding of such rights in writing to the police at 3:00 a.m. on April 25, 1975. Following that, he voluntarily gave a verbal statement which the police videotaped setting out the facts stated above. The evidence shows clearly that appellant was cooperative with the police and that he voluntarily gave them the statements and helped them to locate the victim's wallet. He was also taken to his home where he talked to Mrs. Coombs during the noon hour of that same day and prior to his giving the videotaped statement at 2:00 p.m. There is evidence in the record that he was offered an attorney and declined to accept one, and that he was given the opportunity to make a phone call but did not do so. There is no evidence of duress or intimidation by the police in obtaining any of the statements involved here, and appellant does not claim that such was the case. Even if there is a conflict in the evidence as to the voluntariness of the statement, the reviewing court will not reweigh the evidence and set aside the decision of the trial court where it appears that substantial evidence was produced from which the trial court could find that the statements were freely and voluntarily given by the defendant. *Lane* v. *State*, (1977) 266 Ind. 485, 364 N.E.2d 756; *French* v. *State*, (1977) 266 Ind. 276, 362 N.E.2d 834. Appellant presents no reversible error in this issue.

## II.

The appellant's next contention concerns the sufficiency of the evidence. His sole claim in this regard relates to the effect of conflicting testimony of expert medical witnesses as to the cause of death of the victim. It was apparent when viewing the body that there was very little external bleeding

from the victim's stab wounds. The appellant raised the significance of this phenomenon through his expert witness, Dr. William H. Mott, who testified that it was his opinion that the victim died as a result of a ruptured spleen. Dr. Mott was further of the opinion that all of the clean stab wounds were inflicted after death, or at a point at which death was irreversible. Dr. J. C. Richter testified that he attended the autopsy and that the cause of death was due to multiple stab wounds, with a puncture of the heart being the final factor in bringing about the victim's death. He observed that the spleen was ruptured but it was impossible to tell whether the rupture was from a stab wound or a severe trauma. He did testify that the injury to the spleen could have resulted from a stab wound. He further stated that it was not unusual to see a body with nineteen stab wounds but no external bleeding. Dr. Kim, who performed the autopsy, stated that the reason why there was very little blood present externally was that the rupture of the spleen had caused large amounts of blood to escape into the abdominal cavity. He also testified that the rupture to the spleen could have been caused by a stab wound.

The state submits that the alleged inconsistency that appellant claims is manifested in this expert testimony is ultimately irrelevant in determining appellant's [4–6] criminal responsibility for decedent's death, inasmuch as the evidence clearly shows that the appellant inflicted all of the wounds to the decedent. Jaske had stabbed the decedent in the side while still in the automobile, and struggled with him on the ground prior to carrying him into the woods. The additional stab wounds were inflicted when he observed the decedent was still moving. Even assuming a conflict in the testimony of the expert witnesses, it was the province of the jury to listen to all of their testimony and believe the testimony of those witnesses they found credible and disbelieve those they did not. *Sypniewski* v. *State*, (1977) 267 Ind. 224, 368 N.E.2d 1359, 1364. On re-

view this court will view only that evidence most supportive of the verdict and inferences therefrom which the trier of fact could conclude in reaching the verdict. As long as sufficient evidence supports the conclusion of the trier of facts, the verdict will not be disturbed on appeal. *Smith* v. *State,* (1970) 254 Ind. 401, 260 N.E.2d 558; *Grider* v. *State,* (1974) 162 Ind. App. 354, 319 N.E.2d 668. We find the evidence sufficient to meet that test in this case.

## III.

The appellant's final claim is that the conduct of the trial judge was such that it had the accumulative effect of prejudicing him before the jury. Having made this general statement, the appellant presents only two incidents in which he alleges such conduct took place.

The first incident occurred when, at a point in the trial where the state had a rebuttal witness on the stand, the appellant offered some exhibits into evidence during cross examination of the witness. The court refused the offer on the grounds that the appellant had closed his case and had not moved to reopen it, and that appellant did not show special circumstances to justify its reopening. When appellant requested a hearing on the question, the court dismissed the jury and argument was held out of the presence of the jury. The appellant does not question either the propriety of the court's action in refusing the appellant's offer of the exhibits, or the ruling of the court in refusing the exhibits' admission. Nor does the appellant claim to have been prejudiced by the court's refusal to admit the exhibits. His position is that the court refused the exhibits *sua sponte* without any objection from the state or at any rate, before the state had objected and therefore indicated partiality to the state in the presence of the jury. An examination of the transcript shows that this was nothing more than a legal ruling by the court which a trial judge has the duty and responsibility of making many times dur-

ing the course of a trial. We see nothing in this record to show other than that the court ruled properly at this point, and did so in a proper manner.

Appellant's next allegation of error by the trial court concerns the cross-examination of the appellant's witness, Dr. Mott. After lengthy cross-examination in which the questions had to be rephrased and repeated, the court admonished the witness to listen closely and to answer the question asked. He told him not to avoid the questions or anticipate them, and to confine his answers to that question only. He told the witness not to ask his own questions or to try to fence with the people who were asking them.

In examining the transcript of this testimony, it appears that the trial judge was justified in admonishing the witness as he did. On direct questions put to him by the state, the witness tended to avoid the question or to rephrase the question, and then to answer it in the rephrased manner. The transcript shows that the trial judge showed a great deal of patience and restraint over a long period of testimony by this witness. He required the reporter to reread the questions, and advised counsel to rephrase them in order to attempt to get this witness's testimony before the jury. It is the responsibility of the trial judge to preside over a trial. In doing so, he must require those taking part in it, such as the witnesses, to act properly. He must do so, of course, in such a manner that he does not unduly prejudice one of the parties. With this type of responsibility he faces the risk of prejudicing one of the parties if he does not act at all. He therefore has wide latitude of discretion unless it appears that he went beyond the bounds of good judgment in remedying the situation as it presented itself to him. *Brannum* v. *State,* (1977) 267 Ind. 51, 366 N.E.2d 1180; *Kennedy* v. *State,* (1972) 258 Ind. 211, 380 N.E. 2d 611; *Dombkowski* v. *State,* (1967) 249 Ind. 271, 230 N.E. 2d 602. Here, the trial judge decided that it was necessary

for him to admonish this witness so that the orderly process of the trial might continue. We cannot say that he was unreasonable in taking that action or that his conduct unduly prejudiced the appellant. In view of all of the evidence submitted in this case, which appears to have presented a strong case indicating the guilt of the appellant, it does not appear that the area in which this witness was testifying at the time of the occurrence had such influence upon the verdict that reversal would be justified.

Finding no error on any of these issues, the judgment of the trial court is accordingly affirmed.

Givan, C.J., Hunter, Prentice, JJ. concur; DeBruler, J. concurs in result.

NOTE.—Reported at 379 N.E.2d 451.