Roger JASKE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 584S168.

Supreme Court of Indiana.

July 15, 1986.

Thomas L. Hulse, Miller, Hulse, Lacey, Hardacre, Austin & Chappell, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Following a jury trial, Petitioner-Appellant Roger Jaske was convicted of murder, Ind. Code § 35–13–4–1 (1971 Ed.), and sentenced to life imprisonment. This Court affirmed the conviction. See *Jaske v. State* (1978), 269 Ind. 196, 379 N.E.2d 451. Four years later, in November, 1982, he filed the instant petition for post conviction relief under Ind. Rules of Procedure, Post Conviction Rule 1. The evidence presented at the hearing on the petition consisted of the transcript of the hearing on the motion to suppress. The petition was denied, and defendant now contends that said denial was contrary to law. The following issues are presented in this appeal:

1. whether defendant's confessions should have been excluded as the product of an unlawful arrest;

2. whether the State may now assert defendant's failure to previously raise the issue of illegal arrest, when the State failed to assert the affirmative defense

of waiver in its answer to defendant's petition for post conviction relief;

3. whether defendant is entitled to relief because of alleged ineffective assistance of counsel on appeal.

On April 23, 1975, the LaPorte County police began to investigate the stabbing death of Jeff Harmon. The police learned that Harmon was last seen at defendant's mobile home residence. In response to police request, defendant appeared at the LaPorte County Jail at approximately 11:30 p.m. on April 23. After being given a *Miranda* warning, the defendant was interviewed and informed police that Harmon had come to his trailer, that he later dropped Harmon off in downtown LaPorte at 7:45 p.m., and that defendant then went hunting with one Terry Horn. The police then questioned Horn, who contradicted defendant's story. In response to a further police request that defendant come to the sheriff's office, he voluntarily appeared with a friend, Bruce Schuff, at approximately 9:00 p.m. on April 24. When the interview began, the defendant's first comment was to admit that he lied to police the previous night. Defendant stated that instead of going hunting after dropping off Harmon, the defendant actually picked up Schuff and they went to steal car parts from a local junkyard. After the interview, the defendant was excused and was free to leave. Meanwhile, the police were beginning to interview Schuff. Because of defendant's difficulties related to his transportation home by friends, a police officer drove the defendant home from the sheriff's office. During this time, Schuff told investigating officers that the defendant had asked Schuff to alibi for him, and that Schuff did not go to the junkyard as defendant had stated. The defendant had already left the police vehicle and was entering his dwelling when at approximately 2:30 a.m. on April 25, the sheriff radioed the officer to return the defendant to the sheriff's office. At approximately 3:00 a.m. the defendant was returned and was taken to the interview room, where he was advised of his rights, and signed a waiver. Thereafter, defendant was told that Schuff had contradicted the defendant's second story, and that the police believed defendant to be involved in the homicide. The interview then continued intermittently until approximately 5:20 a.m., at which time defendant began to implicate himself. The individual officer present at that time placed the defendant in a cell for approximately ten minutes, while he obtained the presence of the sheriff and other officers. The defendant was then brought to the interview room, and gave a statement regarding his killing of Jeff Harmon. The interview was completed by approximately 6:00 a.m., at which time the defendant was taken to a cell. A preliminary hearing at the LaPorte City Court was then held at 10:00 a.m. After the preliminary hearing, the defendant accompanied police officers to the scene where he had discarded the victim's billfold, and defendant then retrieved the billfold. The defendant then accompanied the officers to his residence and consented to a search of his automobile. Later that afternoon, at approximately 2:00 p.m., the defendant consented to a videotape recorded statement. Before the beginning of this recorded interview, the defendant was again given a copy of the written rights form which was read to him during the recorded interview. He acknowledged reading the warning and understanding each of his rights, stated that he was willing to answer questions, and stated that he did not want a lawyer before questioning. The defendant made no request for an attorney until April 28, at which time further questioning ceased. Evidence of both the oral statement and the videotape interview, which also contained a confession, were admitted in evidence, along with the billfold, during the trial which resulted in the defendant's conviction.

We shall directly address the merits of Jaske's contentions regarding his alleged unlawful arrest. The remaining issues, waiver and effectiveness of counsel on appeal, arise because of the failure to present and support the Fourth Amendment contention in previous proceedings and there-

fore would be pertinent in this case only in the event of unlawful arrest.

 Jaske correctly asserts that a confession or physical evidence must be excluded from evidence if resulting from custodial interrogation after an illegal arrest. *Triplett v. State* (1982), Ind., 437 N.E.2d 468; *Morris v. State* (1980), 272 Ind. 467, 399 N.E.2d 740; and *Dunaway v. New York* (1979), 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824. The fact that a defendant provides self-implicating evidence following a full and complete *Miranda* warning does not, standing alone, interrupt application of the exclusionary rule. *Brown v. Illinois* (1975), 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416.

Jaske's self-implicating statements and evidence were provided to police following the detention by police which began at approximately 2:30 a.m. on April 25. The legality of the arrest depends upon whether probable cause resulted from the following facts known to police at the time:

A. the victim was last seen at Jaske's residence;

B. when first interviewed by police, Jaske asserted a false explanation of his whereabouts at the time of the fatal stabbing;

C. when next interviewed by police, Jaske admitted the prior falsehood and attempted to explain his whereabouts with this different story, which also proved false; and,

D. Jaske had attempted to deceive police by requesting an acquaintance to lie to police in support of Jaske's second fabricated alibi.

 The quantum of evidence required to establish probable cause to arrest differs from that required to convict. *Henry v. United States* (1959), 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 138; *Capps v. State* (1967), 248 Ind. 472, 477, 229 N.E.2d 794, 796. Probable cause for arrest exists when at the time of the arrest the officer has knowledge of facts and circumstances which would lead a prudent person of reasonable caution to believe the arrestee committed the crime. *Merritt v.*

*State* (1986), Ind., 488 N.E.2d 340; *Fisher v. State* (1984), Ind., 468 N.E.2d 1365; *Battle v. State* (1981), Ind., 415 N.E.2d 39. Applying the standard to the facts of the instant case, we find that the known facts and circumstances provided sufficient probable cause for Jaske's arrest.

 Because the arrest was lawful, the Fourth Amendment safeguards were not violated by the admission of his inculpatory statements and resulting evidence.

We affirm the judgment of the post conviction trial court.

GIVAN, C.J., and DeBRULER, PIVARNIK and SHEPARD, JJ., concur.