**D.H. FLEENOR, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 1184 S 458.

Supreme Court of Indiana.

Oct. 13, 1987.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from two convictions for murder, I.C. § 35–42–1–1, and a conviction for burglary, I.C. § 35–43–2–1. A jury returned verdicts of guilty on all counts. The jury also recommended a death sentence. Appellant received a death sentence for the murder. I.C. § 35–50–2–9. There is no record before the court showing that a sentence for burglary was given.

There are twenty-one issues on appeal: (1) whether the right to an impartial jury was denied by the exclusion of prospective jurors who could not conscientiously consider the death penalty; (2) whether several prospective jurors were improperly excluded due to their views on the death penalty; (3) whether the trial court erred in admitting into evidence several State's exhibits which consisted of photographs depicting the victims and the crime scene; (4) whether there is sufficient evidence to support the convictions; (5) whether the trial court erred in refusing the tendered penalty phase Instruction No. 3 and in editing the tendered penalty phase Instruction No. 2; (6) whether the trial court erred in giving penalty phase Instructions No. 4 and No. 12; (7) whether the trial court erred in refusing to admit into evidence appellant's Exhibit B, a report documenting the death penalty positions of various religious organizations; (8) whether the trial court denied him the right to be heard at the sentencing hearing; (9) whether the trial court failed to find, value and weigh all existing mitigating circumstances; (10) whether the death penalty statute has reduced the arbitrary, capricious and random selection of those sentenced to death; (11) whether death by electrocution is cruel and unusual punishment under the Eighth Amendment of the United States Constitution; (12) whether the death penalty statute violates Article 1, § 18 of the Indiana Constitution; (13) whether the death penalty statute is unconstitutional due to the degree of prosecutorial discretion it vests in charging; (14) whether the death penalty statute is uncon-stitutional because it does not provide for the automatic exclusion of jurors who would always vote for the death penalty in murder cases; (15) whether the death penalty statute is unconstitutional because it does not require the jury to make written findings of fact; (16) whether the death penalty statute is unconstitutional because it does not specifically guide the sentencer's discretion in weighing the aggravating circumstances and the mitigating circumstances; (17) whether the death penalty statute is unconstitutional because it does not require the sentencer to find that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt; (18) whether the death penalty statute is unconstitutional because it does not prescribe specific rules to govern appellate review of death sentences; (19) whether the death penalty statute is unconstitutional because it does not require any comparative proportionality review; (20) whether the death penalty statute is unconstitutional because it does not require a finding of specific intent to kill in order for the death penalty to be imposed when the underlying charge is felony murder; (21) whether the death penalty statute is unconstitutional because it permits burglary to be employed as an aggravating circumstance where burglary is also an independent offense.

These are the facts from the record that support the determination of guilt. This series of tragic events involves appellant, D.H. Fleenor, appellant's estranged wife, Sandra Sedam, the wife's mother, Nyla Harlow, and the wife's stepfather, Bill Harlow.

On December 12, 1982, between 3:00 p.m. and 4:00 p.m., appellant purchased a .22 Colt Peacemaker. During the course of the afternoon, he consumed approximately four beers, and he smoked a marijuana cigarette. He did not appear to be drunk or out of control to his companion.

Between 4:00 p.m. and 5:00 p.m., Sandra Sedam and Nyla Harlow were Christmas shopping at a department store. At the store, they encountered appellant, and they talked to him for about ten minutes. Ap-

pellant was agitated and might have been drinking before this conversation.

At approximately 6:30 p.m., appellant sought out Sandra Sedam at a church service. He behaved properly in the church, he apologized for the earlier meeting, and then he left.

Afterwards, he was given a ride to the area of the Harlow's home, and he entered it.

At 7:30 p.m., Bill Harlow, Nyla Harlow, Sandra Sedam, Sandra's little boy Justin, and Bill Harlow's grandchildren Billy and Angie returned home from church. Bill and Nyla started talking about appellant showing up at the church. At that point, appellant appeared in the hallway, and he shot Bill. He then ordered the two women and the children to sit on the couch. Thereafter, he allowed Nyla to go to her husband Bill, who was on the floor. As she assisted Bill, appellant shot her in the head. He ordered Sandra, Billy and Angie to carry Nyla into the bedroom. Subsequently, appellant, Sandra, Billy, Angie and Justin drove to the home of James Sedam, Sandra's brother. Appellant then ordered Angie to tell James that they were going out of town for a few days. They then returned to the Harlow's home. Bill Harlow was conscious, and he asked about his wife. Bill asked appellant not to leave him there. Appellant then said to Sandra, "You know I have to .. I can't let him suffer any more". Immediately thereafter, appellant shot Bill Harlow again. The next morning, appellant fled to Tennessee with Sandra, Billy, Angie and Justin accompanying him. While in Tennessee, appellant called his mother in Indiana, and he told her that he thought he killed the Harlows. Testimony established that the Harlow's both died from gunshot wounds to the head.

I

■ Appellant contends that the trial court denied him a fair trial. Specifically, he argues that the exclusion of jurors who could not conscientiously consider the death penalty created a "conviction prone" jury.

Appellant relies on *Grigsby v. Mabry* (8th Cir., 1985), 758 F.2d 226, *cert. granted sub nom. Lockhart v. McCree* (1985), 474 U.S. 816, 106 S.Ct. 59, 88 L.Ed.2d 48, to support his position. The United States Supreme Court has now ruled against appellant's position. See *Lockhart v. McCree* (1986), 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137; see also *Burris v. State* (1984), Ind., 465 N.E.2d 171.

"In our view, it is simply not possible to define jury impartiality, for constitutional purposes, by reference to some hypothetical mix of individual viewpoints. Prospective jurors come from many different backgrounds, and have many different attitudes and predispositions. But the Constitution presupposes that a jury selected from a fair cross-section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case."

*Lockhart, supra,* 106 S.Ct. at 1770.

II

■ Appellant argues that the trial court erred in excluding several prospective jurors for cause due to their opposition to the death penalty.

"The United States Supreme Court set out the standard to be followed on voir dire in death penalty cases in *Witherspoon v. Illinois* (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. The Court held that the jury impartiality to which a criminal defendant is entitled precludes a state from carrying out a sentence of death if the jury that imposed or recommended the death penalty 'was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.' 391 U.S. at 522, 88 S.Ct. at 1777, 20 L.Ed.2d at 785. Only when a venireman is 'irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings'

can he be struck for cause. 391 U.S. at 522–23 n. 21, 88 S.Ct. at 1777 n. 21, 20 L.Ed.2d at 785 n. 21. Indiana has followed this decision in *Lamar v. State* (1977), 266 Ind. 689, 366 N.E.2d 652, and *Monserrate v. State* (1971), 256 Ind. 623, 271 N.E.2d 420.

It has been clearly recognized that the Witherspoon standard can present a dilemma to the trial court when some of a juror's answers about his belief in the death penalty are equivocal. It is then the duty of the trial court to pursue the matter further until it is established that the juror is 'irrevocably committed' to vote against the death penalty. *Lamar v. State, supra.*"

*Daniels v. State* (1983), Ind., 453 N.E.2d 160, 166.

Appellant specifically challenges the exclusion of veniremen Yarnell, Adams, and Smith. The kernel of his claim is that each venireman allegedly responded that they could consider the death penalty. Appellant's claim, however, is not sustained when each venireman's testimony is viewed in its entirety.

The pertinent part of Yarnell's testimony is set forth here:

"Q. Is it absolutely impossible—would it be absolutely impossible for you to consider the death penalty?

A. I'm afraid it would be, and in looking down the road as to what it might-how it might affect me.

Q. Well, let me just give you a moment, sir, and I want you to just think about this question. Is there a possible situation in which you could impose the death penalty as you are here today, right now? I ask you for your answer—yes or no. Can you conceive of a—of a situation in which you would as a juror vote to impose the death penalty?

A. I really can't conceive of it no ...
   Court: Okay now, uh, I ... hate to ask you the same question again, but is it possible for you to consider it or is it not possible for you to consider it?

A. I don't feel like I could consider it ..."

Court: And if you were to be on the jury in this case, you could not consider it.

A. No, sir."

The pertinent part of Adam's testimony is set forth here:

"Q. Okay. Would you automatically vote against recommending the death penalty? This is a general question, not this case.

A. Would I automatically what—what is it again?

Q. Vote against the death penalty recommendation.

A. Yes, I would.
   Court: Now, let me ask you ... does that mean that in any case, no matter how aggravated the situation, if you were to be a juror in the death penalty phase of the case, that you would automatically vote no.

A. Yes, I would ...
   Court: ... does that mean that you would not consider the death penalty?

A. Yes.
   Court: So, you're now gonna give me an unequivocal yes?

A. Yes, I'd have to."

The pertinent part of Smith's testimony is set forth here:

"Q. Okay. And when you—if you get to the second phase, can you consider the death penalty?

A. Honestly, no.

Q. You can't consider the death penalty?

A. No.

Q. Alright. Can you imagine any case in which the death penalty might be appropriate?

A. No ..."

It is clear from the preceding testimony that the trial court properly excluded veniremen Yarnell, Adams, and Smith.

### III

Appellant argues that the trial court erred in admitting State's Exhibits 3, 4, 5, 6, 10, 12, 13, 14, and 20. The challenged exhibits consist of photographs of the victims and the crime scene. Appellant timely

objected to the admission of each exhibit on the grounds that they were so repetitious, gruesome, and prejudicial as to render the verdict improper.

"To be admitted, it must first be established that the photographs are a true and accurate representation of the things they are intended to portray. *Johnson v. State* (1972), 258 Ind. 648, 283 N.E.2d 532. Their relevancy is determined by whether a witness would be permitted to describe verbally that which the photograph depicts. *Murphy v. State* (1977) [267] Ind. [411], 369 N.E.2d 411. Although the photographs may depict gory, revolting or inflammatory details of the crime when presented to the jury, this is not a sufficient basis for excluding such evidence. *Sotelo v. State* (1976), 264 Ind. 298, 342 N.E.2d 844; *Meredith v. State* (1966), 247 Ind. 233, 214 N.E.2d 385."

*Wilson v. State* (1978), 268 Ind. 112, 374 N.E.2d 45, 48.

The photographs were relevant because they were illustrative of verbal testimony concerning the perpetration of the offense. Furthermore, the photographs of the victim's bodies were not overly gruesome nor repetitious.

### IV

■ Appellant argues that there was insufficient evidence to support his convictions. Specifically, he contends that the State failed to prove beyond a reasonable doubt that he possessed the requisite intent for the offenses.

"In reviewing this allegation this Court will not weigh the evidence nor resolve questions of credibility, but will look to that evidence and the reasonable inferences therefrom which support the verdict of the trial court. *Glover v. State* (1970), 253 Ind. 536, 255 N.E.2d 657.

The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Fair v. State* (1969) [252] Ind. [494], 250 N.E.2d 744."

*Smith v. State* (1970), 254 Ind. 401, 260 N.E.2d 558.

Here is the evidence most favorable to the verdict. Within two hours prior to the offenses, witnesses Chatham, Griffin, and Albert observed appellant. Chatham testified that appellant did not appear to be intoxicated, that appellant had consumed four beers over several hours, and that appellant's mood appeared to be good. Albert testified that appellant did not appear to be intoxicated.

Appellant purchased a Colt .22 peacemaker within six hours of the offenses. Prior to the offenses, appellant told various people of his intentions to kill someone. In reference to the victims, he said, "If they keep it on, I'm gonna get 'em."

Appellant's actions during the commission of the killings indicated that he possessed a knowing state of mind. He directed that the victim, Nyla Harlow, be carried to the bedroom. This gives rise to the inference that he knew she had been injured or killed. When appellant shot the victim, Bill Harlow, he said that he could not let him suffer any more. This statement gives rise to two inferences: first, that appellant knew he had shot and injured him with the first shot, and second, that appellant intended to kill Harlow with the second shot as an act of some form of perverted mercy killing. Finally, appellant's action in fleeing to Tennessee indicates an awareness and consciousness of guilt.

The preceding evidence also provides an adequate basis for the conclusion that appellant possessed an intent to kill when he broke and entered the Harlow's home.

### V

■ Appellant argues that the trial court erred in refusing his tendered penalty phase Instruction No. 3 and in editing his tendered penalty phase Instruction No. 2.

"A three-part test is employed to determine whether a trial court has erred in its refusal to give a tendered instruction:

'In considering whether any error results from refusal of a tendered instruction we must determine: (1) whether the tendered instruction cor-

rectly states the law, *Gayer v. State* (1965), 247 Ind. 113, 210 N.E.2d 852; (2) whether there is evidence in the record to support the giving of the instruction, *Wathen v. State* (1965), 246 Ind. 245, 204 N.E.2d 526; (3) whether the substance of the tendered instruction is covered by other instructions which are given, *Hash v. State* (1972), 258 Ind. 692, 284 N.E.2d 770.' "
*Richey v. State* (1981), Ind., 426 N.E.2d 389.

Tendered Instruction No. 3 is set forth here:

"In determining whether or not to recommend the death sentence for D.H. Fleenor, you should look to your own background, experience, beliefs and convictions, as well as your feelings concerning the death penalty in deciding whether or not to recommend such a sentencing in this case. If after examining your own background, experience and beliefs concerning to death penalty, you feel that the death penalty should not be given to D.H. Fleenor for any reason, you may elect not to recommend the death penalty in this case".

The trial court gave Final Instruction No. 1 to the jury.

"The mitigating circumstances which I have read for your consideration are given to you merely as examples of some of the factors that you may take into account as reasons for deciding not to recommend a death sentence upon D.H. Fleenor. You should pay careful attention to each of those factors. Any one of them may be sufficient, standing alone, to support a decision that death is not the appropriate punishment in this case. You should not limit your consideration of mitigating circumstances to these specific factors. You may also consider any other appropriate circumstances relating to the case or to D.H. Fleenor as reasons for not recommending the death sentence."

Although the trial court's instruction is not identical to appellant's tendered instruction, it conveys the same basic message; therefore, the trial court did not err in refusing to give his tendered Instruction No. 3 in that the substance of the tendered instruction was covered in Final Instruction No. 1.

Tendered Instruction No. 2 is set forth here:

"I have previously read to you the list of aggravating circumstances which the law permits you to consider if you find that any of them is established by the evidence beyond reasonable doubt. These are the only aggravating circumstances that you may consider. You are not allowed to take account of any other facts or circumstances as the basis for deciding that the death penalty would be an appropriate punishment in this case."

The trial court gave Final Instruction No. 4 to the jury.

"I have previously read to you the list of aggravating circumstances which the law permits you to consider if you find that any of them is established by the evidence beyond reasonable doubt. These are the only aggravating circumstances that you may consider."

The trial court excised the last sentence from appellant's instruction. It is clear that the excised sentence is merely a restatement of the second sentence in the final instruction, consequently, we discern no harm to appellant.

## VI

◼ Appellant argues that the trial court erred in giving Penalty Phase Instructions No. 4 and No. 12.

"It is well settled that instructions are to be considered with reference to each other and as an entirety, and error in a particular instruction will not justify a reversal unless the error is of such a nature that the whole charge of which it forms a part misleads the jury as to the law of the case. *Porter v. State* (1979) [271] Ind. [180], 391 N.E.2d 801; *Ferrier v. State* (1977), 266 Ind. 117, 361 N.E.2d 150."
*Daniels v. State* (1980), 274 Ind. 29, 408 N.E.2d 1244, 1246.

Instruction No. 4 is set forth here:

"Since this is a criminal case the Constitution of the State of Indiana makes you the judges of both the law and the facts. Though this means that you are to determine the law for yourself, it does not mean that you have the right to make, repeal, disregard, or ignore the law as it exists. The instructions of the court are the best source as to the law applicable to this case."

Language similar to that contained in this instruction has been approved in the past. *Hitch v. State* (1972), 259 Ind. 1, 284 N.E.2d 783, *Minton v. State* (1966), 247 Ind. 307, 214 N.E.2d 380, and *Beavers v. State* (1957), 236 Ind. 549, 141 N.E.2d 118. Appellant argues that this line of cases is contrary to the plain language of Article I, § 19 of the Indiana Constitution which states, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." We see no reason to interfere with existing precedent. The trial court did not err in giving Instruction No. 4.

██ Instruction No. 12 is set forth here: "You, the jury are vested with the power by statute to recommend to this Court under the circumstances previously discussed whether or not the defendant is to receive the death penalty. Although your recommendation is not binding upon this Court, it is a very valuable contribution to the decision making process of this Court. In order that you make a well reasoned recommendation, you need to be aware of the available alternatives. The alternative sentences are:

(1) On each count of murder, defendant could be sentenced to death; or
(2) The defendant could be imprisoned for a fixed term of forty (40) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances. Further, defendant could be imprisoned for a fixed term of ten (10) years for Burglary with ten (10) years added for aggravating circumstances and four (4) years subtracted for mitigating circumstances.

The Court can impose these sentences concurrently or consecutively.

In addition, defendant may be fined not more than Ten Thousand Dollars ($10,000).

If defendant is sentenced to a term of imprisonment by this Court, he may receive credit time which, at the earliest, could allow him to be released on parole after serving one-half of the term of imprisonment imposed by this Court."

Appellant argues that this instruction is misleading because it does not inform the jury that the death penalty is only an alternative after certain findings of fact are made. This argument ignores the fact that the trial court instructed the jury that before it could recommend a death sentence it must find that the State has proved the existence of at least one aggravating circumstance beyond a reasonable doubt and that the aggravating circumstance must outweigh the mitigating circumstances. The instructions read as a whole are not misleading.

## VII

██ Appellant argues that the trial court erred in excluding his Exhibit B, a report documenting the death penalty positions of various religious organizations.

Appellant offered Exhibit B during the sentencing hearing prior to the jury recommendation. The State objected on the grounds of relevancy. The trial court sustained the objection.

The party who alleges error has the duty to provide a proper record on appeal so that an intelligent review of the issues may be made. See *Jaske v. State* (1978), 269 Ind. 196, 379 N.E.2d 451, 453. Here, there is no Exhibit B in the record; consequently, appellate review is foreclosed.

Moreover, the trial court allowed into evidence testimony from the challenged exhibit concerning the opposition to the death penalty by virtually every major religious organization in the United States. Consequently, the exclusion of Exhibit B did not prejudice appellant.

## VIII

■ Appellant argues that the trial court denied him his right to be heard at the sentencing hearing. Specifically, he contends that the trial court prepared in advance its findings of fact and conclusions of law; consequently, the trial court did not consider the evidence presented at the sentencing hearing.

On December 6, 1983, the jury, after hearing extensive testimony, recommended the death penalty. On December 21, 1983, a pre-sentence report was filed. On January 3, 1984, defense counsel submitted a written statement. On January 4, 1984, the trial court held a sentencing hearing. At the close of this hearing, the trial court read its findings of fact and conclusions of law, sentencing appellant to death. On March 5, 1984, defense counsel filed an uncontroverted affidavit which stated that the trial court's sentencing statement had been prepared in advance of the sentencing hearing.

The fact that the trial court prepared the sentencing statement in advance does not necessarily lead to the inference that the trial court had already reached its final decision. To accept such an inference, without other supporting evidence, would condemn trial judges for being prepared. This we will not do. There is nothing in the record that indicates that the trial court did not reach its final sentencing decision until after it heard all the evidence.

## IX

■ Appellant next complains that his death sentence is arbitrary, capricious, and cruel and unusual punishment under the Eighth Amendment of the United States constitution, because the sentencing trial court did not find, value, and weigh uncontroverted mitigating circumstances. The focus of this argument is upon the categories enumerated in I.C. § 35–50–2–9(c)(2) and (c)(6), which included the influence of extreme mental or emotional disturbance, and substantial impairment through mental disease or defect or of intoxication.

The trial court found three aggravating circumstances, namely, an intentional killing in the course of a felony, murder by lying in wait, and conviction of two murders, I.C. § 35–50–2–9(b)(1), (3) and (7); and that they outweigh "any mitigating circumstance".

The court sought to comply with the requirements of the death sentence statute to consider, determine and weigh mitigating circumstances through use of the categories enumerated in the statute, as a check list. The court's negative finding upon each such category did not reach the level of specificity of appellant's argument that the court did not consider certain circumstances such as his history of alcohol abuse, the fact that his stepfather abused him in his formative years, his low intelligence, his low tolerance for stress, and his continuous depression. The court did make general reference to a prior conviction for the felony of attempted battery, to the testimony of psychiatrists and psychologists dealing with impairment due to mental defect or disease or intoxication, and to the various character traits revealed by appellant in his conduct comprising the criminal episodes. The court specifically concluded with the comparative weight noted above.

The Eighth Amendment requires that the sentencer listen to evidence proferred as mitigating with an open mind, recognize all relevant mitigating evidence, and determine the weight thereof. *Eddings v. Oklahoma* (1982), 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1. The defendant's rights are violated when the sentencer gives no weight to relevant mitigating evidence by excluding such evidence from its consideration.

The approach taken by the trial court here is like the one approved by this court in *Schiro v. State* (1983), Ind., 451 N.E.2d 1047 where the judge noted each mitigating circumstance from the statute and upon consideration of evidence rejected each. Here, the expert testimony and the inferences from other evidence varied considerably with regard to the level which appellant's mental problems had reached. Appellant's mother testified that he had not been abused as a child by his stepfather, but that he had been belittled, whipped,

and there had been much fussing. The evidence showed a turbulent childhood with the use of alcohol and drugs, although appellant did not leave school until his senior year in high school. Appellant had many encounters with the law, most associated with his abuse of substances. One expert held to the opinion that he suffered from a condition of antisocial personality disorder. One psychiatrist testified that appellant had had no psychotic episodes and was not mentally ill in the sense that he was retarded or had an impaired ability to function. Appellant had an I.Q. in the range of 80 to 90, was able to earn a living throughout the years, was able to form relationships although not lasting ones, and was not seriously impaired in his health by his dependence upon substances. He was described as reckless and using poor judgment when under the influence of alcohol. Appellant was also described as belligerent and easily angered while under the influence of alcohol.

The sentencing court noted in its statement that appellant's behavior in committing these two murders was "premeditated, purposeful, and goal oriented." This is a fair assessment even though appellant was undoubtedly under severe stress and some alcohol at the time. We note that he conceived of the plan, announced it to others and very importantly communicated and cooperated with other persons as he approached the event, purchasing the murder weapon and getting rides with others in their cars to accomplish it. He was operating in an environment which required communications with others, reflection, and the operation of the judgmental faculties. There was therefore evidence within that noted in general fashion by the court in its statement that warrants the conclusion that appellant's mental disturbance was not extreme at the time of the murders and that his capacities as identified in the statute were not substantially impaired.

We conclude therefore that the court complied with the mandate of the Eighth Amendment in handling mitigating evidence. The sentencing court's statement, when considered in light of the record as a whole, did not reject evidence of appellant's turbulent childhood and past, his history of substance abuse, and his mental condition, as irrelevant, but did instead consider such evidence to have been of little or no mitigating weight. There is ample support in the record for this evaluation, and while this court would grant these considerations more mitigating weight than did the trial court, we are nevertheless in accord with the ultimate decision reached, namely that the mitigating circumstances are outweighed by the aggravating circumstances. The sentence of death rests upon considerations going to the nature of these offenses and appellant's character. This sentence has not been arrived at arbitrarily or capriciously and is furthermore not manifestly unreasonable.

## X

▮ Appellant argues that his death sentence pursuant to I.C. § 35–50–2–9 violates the Eighth Amendment to the United States Constitution. He contends that the statutory scheme delineated in I.C. § 35–50–2–9 and the discretion limiting procedural safeguards contained therein have not reduced the arbitrary, random and capricious selection of those sentenced to death.

This Court has rejected this position. *Davis v. State* (1985), Ind., 477 N.E.2d 889; *Smith v. State* (1984), Ind., 465 N.E.2d 1105.

## XI

▮ Appellant argues that death by electrocution pursuant to I.C. § 35–38–6–1 violates the Eighth Amendment of the United States Constitution because it allegedly inflicts unnecessary and wanton pain. Appellant offers no support for this contention. This Court has commented:

"The word [cruel], according to modern interpretation, does not affect legislation providing imprisonment for life or for years, or the death penalty by hanging or electrocution."

*Miller v. State* (1898), 149 Ind. 607, 618, 49 N.E. 894, 897. Until we are presented with convincing evidence that electrocution inflicts unnecessary and wanton pain, or un-

til the Supreme Court of the United States declares electrocution to be contrary to the Eighth Amendment, we see no reason to adopt appellant's position.

## XII

■ Appellant argues that the death penalty statute violates Article 1, Section 18 of the Indiana Constitution which requires our penal code to be founded on the principles of reformation and not on the principles of vindictive justice.

However, this provision has been consistently interpreted by this Court not to prohibit capital punishment. We have found that this section is an admonition to the legislative branch of the state government and is addressed to the public policy which the legislature must follow in formulating the penal code. It applies to the penal laws as a system to insure that these laws are framed upon the theory of reformation as well as the protection of society. *Brewer v. State* [ (1981), Ind., 417 N.E.2d 889], supra; *French v. State* (1977), 266 Ind. 276, 362 N.E.2d 834; *Denson v. State* (1975), 263 Ind. 315, 330 N.E.2d 734; *Adams v. State* (1971), 259 Ind. 64, 271 N.E.2d 425; *Kistler v. State* (1921), 190 Ind. 149, 129 N.E. 625.

*Williams v. State* (1982), Ind., 430 N.E.2d 759, 766.

## XIII

■ Appellant argues that the death penalty statute is unconstitutional due to the degree of prosecutorial discretion it vests in charging.

"This Court has considered this particular contention before and rejected it. *Schiro, supra; Williams v. State* (1982), Ind., 430 N.E.2d 759, appeal dismissed 459 U.S. 808, 103 S.Ct. 33, 74 L.Ed.2d 47. The United States Supreme Court likewise has specifically held there is no constitutional provision prohibiting prosecutorial discretion in charging the death penalty. *Jurek v. Texas* (1976), 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929; *Proffitt, supra; Gregg v. Georgia* (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859. In *Resnover v. State* (1984), Ind., 460 N.E.2d 922, cert denied, 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160, this Court rejected this contention while noting that the proponents of this contention overlook the fact that after the prosecutor makes his charge, 'a subsequent [judicial] procedure dictated by statute prevents the arbitrary and capricious infliction of a death penalty.' *Resnover*, 460 N.E.2d at 929. This Court also has held: '[A]ny discretionary power that is vested in the prosecuting attorneys under the death penalty statute is exercised under the control of the courts of this state.' *Williams*, 430 N.E.2d at 766.''

*Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 94; see also *Averhart v. State* (1984), Ind., 470 N.E.2d 666, 694.

## XIV

■ Appellant argues that the death penalty statute is unconstitutional because it does not provide for the automatic exclusion of prospective jurors who would always vote for the death penalty in murder cases.

"Defendant also claims that Ind.Code § 35–50–2–9 is unconstitutional because it does not require removal of any juror who says he will automatically vote to impose the death penalty following conviction. First of all, there has been no harm to the defendant because no juror stated he or she favored automatic imposition of the death penalty. Second, Ind. Code § 35–50–2–9 does not permit an automatic recommendation of death. Under section (e), the jury may recommend the death penalty *only* if it finds: "(1) That the state has proved beyond a reasonable doubt that at least one [1] of the aggravating circumstances exist; and (2) That any mitigating circumstances that exist are out weighed by the aggravating circumstance or circumstances." Thus, the statute mandates a procedure where juries must apply a high standard of proof of aggravation as a threshold matter and then weigh countervailing circumstances against it. It is highly un-

likely that a trial court would permit a juror to serve who states that he or she could not follow the law. Defendant's argument that § 35–50–2–9 is unconstitutional because it does not provide for the removal of jurors must fail."

*Burris v. State* (1984), Ind., 465 N.E.2d 171, 180.

In this case, no juror stated that he or she favored the automatic imposition of the death penalty. Therefore, appellant was not prejudiced. Those prospective jurors that state that they will automatically vote for the death penalty, despite the instructions, are eligible for exclusion on the grounds that they cannot follow the law; however, none of the prospective jurors here fell into that category.

### XV

◼ Appellant argues that the death penalty statute is unconstitutional because it does not require the jury to make written findings of fact.

"There is no authority, however, for the proposition that juries who make recommendations to judges who then make the ultimate sentencing decision need make written findings so long as the trial judge submits written findings adequate for review particularly where, as in our statutes, the trial judge operates as the ultimate sentencer rather than simply as a reviewer of the jury's recommendation. The trial judge is the only authority allowed by statute to determine the proper penalty which he or she does according to the standards prescribed by the statute. The trial judge in sentencing must adhere to a high degree of specificity and must take care that the requisite written reasons for the imposition of a sentence recite the actual facts relating to the character of the offense and of the offender. *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, cert. denied, 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699.... This Court previously has concluded that our statutory procedure satisfies all requirements for written findings announced by the U.S. Supreme Court in order to provide for a meaningful appellate review

by demanding such findings from the judge. *Brewer v. State* (1981), 275 Ind. 338, 417 N.E.2d 889, cert. denied, (1982), 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384; *Judy v. State* (1981), 275 Ind. 145, 416 N.E.2d 95."

*Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 86.

### XVI

◼ Appellant argues that the death penalty statute is unconstitutional because it does not specifically guide the sentencer's discretion in weighing the aggravating circumstances and the mitigating circumstances.

"[T]he necessary standards and guidance are found by looking at our criminal statutes and procedural rules in their entirety. Indiana's general sentencing hearing statute requires, in all cases where there are aggravating circumstances present, that the sentencing judge include a written statement of the reasons for selecting the sentence he imposes. Ind.Code § 35–4.1–4–3 (Burns § 35–50–1A–3, 1979 Repl.). Our death penalty statute requires that the jury may recommend the death penalty only if it unanimously finds beyond a reasonable doubt that at least one of the enumerated aggravating circumstances does exist, and that the mitigating circumstances, if any, do not outweigh the aggravating circumstances. Ind.Code § 35–50–2–9(e) (Burns 1979 Repl.) The trial court, who then makes the final determination of the sentence to be imposed, must consider the jury's recommendation and must also base his decision on the same standards that the jury was required to consider. *Id.* Finally, every sentence of death is subject to automatic, expedited review by this Court. Ind.Code § 35–50–2–9(h) (Burns 1979 Repl.). This review is thorough and adequate since we have before us the entire record of the proceedings, including the complete record of the sentencing hearing and the trial court's written statement of the reasons for the sentence imposed. *Brewer v. State, supra; Judy v. State, supra.* This sentencing procedure gives clear and specific guid-

ance to the sentencing authority and adequately protects each individual's constitutional rights."

*Williams v. State* (1982), Ind., 430 N.E.2d 759, 765.

## XVII

■ Appellant argues that the death penalty statute is unconstitutional because it does not require the sentencer to find that the aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt.

"[T]he determination of weight to be accorded the aggravating and mitigating circumstances is not a 'fact' which must be proved beyond a reasonable doubt but is a balancing process."

*Daniels v. State* (1983), Ind., 453 N.E.2d 160, 171; see also *Zant v. Stephens* (1983), 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235.

## XVIII

■ Appellant argues that the death penalty statute is unconstitutional because it does not prescribe specific rules to govern appellate review of death sentences.

This Court has repeatedly held that the standard rules of appellate review of sentences are adequate to promote the constitutional and statutory mandate that appellate review be meaningful. See *Bieghler v. State* (1985), Ind., 481 N.E.2d 78; *Moore v. State* (1985), Ind., 479 N.E.2d 1264.

## XIX

■ Appellant argues that the death penalty statute is unconstitutional because it does not require any comparative proportionality review.

The Supreme Court of the United States said in *Pulley v. Harris* (1984), 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29, that:

"There is thus no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it."

*Pulley, supra,* 104 S.Ct. at 879.

Nevertheless, the Court has held that "... because of procedure mandated by statute, codified by rules, and controlled by cited precedent, this Court can then meaningfully and systematically review each case in which capital punishment has been chosen, in light of other death penalty cases." *Burris v. State* (1984), Ind., 465 N.E.2d 171, 191; *Judy v. State* (1981), 275 Ind. 145, 416 N.E.2d 95, 108.

## XX

■ Appellant argues that the death penalty statute is unconstitutional because it does not require a finding of specific intent to kill in order for the death penalty to be imposed when the underlying charge is felony murder.

Appellant has no standing to raise this issue because he was not convicted of felony murder; he was convicted of murder. Nevertheless, his assertion is false. A finding of an "intentional killing" is required pursuant to I.C. § 35–50–2–9(b)(1).

## XXI

■ Appellant argues that the death statute is unconstitutional because it permits burglary to be employed as an aggravating circumstance in a case where burglary is also an independent offense.

He claims that under the felony-murder merger rule, it is unconstitutional to sentence him for burglary and to sentence him to death for murder. First, appellant was not convicted of felony murder; therefore, this situation is not completely analogous to the felony murder merger rule situation.

If there is a double punishment problem in this case, it does not render the death penalty statute unconstitutional. The double punishment problem is resolved by the elimination of the burglary sentence. The trial court did not sentence him on the burglary conviction; consequently, appellant has suffered no harm.

The judgment of the trial court is affirmed in all things; the cause is remanded

to the trial court for the purpose of fixing a date for the sentence to be carried out.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.