## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 03 2018, 8:43 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan M. Truitt
Bertig and Associates, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Leon Hollingsworth III, *Appellant-Defendant,* | May 3, 2018 |
| | Court of Appeals Case No. 64A03-1708-CR-1804 |
| *v.* | Appeal from the Porter Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Hon. Mary R. Harper, Judge |
| | Trial Court Cause No. 64D05-1702-F5-1429 |

**Bradford, Judge.**

# Case Summary

In February of 2017, Leon Hollingsworth and Eric Gordon were involved in an altercation, during which Hollingsworth gouged Gordon's eye with his thumb, resulting in bleeding, excruciating pain, and skewed vision. When police arrived, Hollingsworth did not give a statement. Hollingsworth was arrested, first taken to jail, then to a hospital for treatment of his ankle, and finally back to jail. At some point, Hollingsworth did mention to police officers that he did not know Gordon and that Gordon had attacked him and struck him first. Police officers did not advise Hollingsworth of his right to silence. The State charged Hollingsworth with Level 5 felony battery, and a jury trial was held. During trial, two police officers testified that Hollingsworth had refused to give a statement, and the prosecutor argued in closing that his silence was incriminating. The jury found Hollingsworth guilty as charged. Hollingsworth contends that the State's use of his silence against him at his trial constituted fundamental error. Because we disagree, we affirm.

# Facts and Procedural History

On February 11, 2017, Gordon, who was dating Hollingsworth's ex-girlfriend, stopped at a Portage gas station for coffee. Hollingsworth followed Gordon into the store and took Gordon's telephone from his hands. Gordon told the clerk to call the police, tried to take his telephone back from Hollingsworth, and restrained Hollingsworth from behind. Customer Gabriel Magana saw the struggle and helped Gordon to restrain Hollingsworth. When Hollingsworth

said he would stop, Gordon and Magana let him go, whereupon Hollingsworth lunged at Gordon, using his thumb to gouge Gordon's eye. Gordon "immediately saw stars [and felt] very excruciating pain." Tr. Vol. II p. 42. It appeared to Magana that Hollingsworth tried to "go after [Gordon's] eyes." Tr. Vol. II p. 78. When Portage police officers arrived, Gordon was bleeding from his left eye, and his vision was skewed. As it happened, Gordon had to miss three days of work; felt pain in his left eye for two weeks; and, as of trial, still experiences redness in his eye that worsens with exercise.

[3] Officer Rob Nichols asked Hollingsworth what happened, but Hollingsworth said he would not tell. At some point before Hollingsworth was transported to jail by Officer Noah Frizzel, he told Officer Nichols that Gordon "attacked him for claiming he stole his cell phone." Tr. Vol. II p. 111. Hollingsworth told Officer Frizzel that he did not know Gordon, that Gordon struck him first, and that his ankle hurt. Hollingsworth was transported to the hospital for his ankle injury but did not make statements to Officer Nichols at the hospital or during the drive back to jail.

[4] On February 13, 2017, the State charged Hollingsworth with Level 5 felony battery. On June 12 and 14, 2017, a jury trial was conducted. Officers Nichols and Benjamin Tobey, who had also responded to the gas station, testified that Hollingsworth refused to give a statement before he was arrested. Officer Tobey also testified that Hollingsworth never told him that he had acted in self-defense, a claim which, in the officer's experience, is typically brought up immediately. Officer Nichols also testified that Hollingsworth did not make a

statement at the hospital or in the vehicle on the way back to the jail. Hollingsworth did not object to Officer Nichols's or Officer Tobey's testimony. There was no evidence presented at trial that Hollingsworth was advised of his *Miranda*[1] rights at any point.

[5] During closing argument, the prosecutor argued,

> Where was the diarrhea of the mouth explaining to the police officers that wait, you've got it all wrong. This is what happened. I came in. I was just, you know, looking for my ex-girl. You don't have that. Why? Because he knows that he has to keep his mouth shut so that all of the stuff that came out today isn't used against him.

Tr. Vol. II p. 174. Hollingsworth did not object to the prosecutor's closing argument. The jury found Hollingsworth guilty as charged, and following a sentencing hearing on July 11, 2017, the trial court sentenced him to five years of incarceration.

# Discussion and Decision

[6] Hollingworth contends that the State violated his due process rights by commenting on his post-arrest silence at his trial. Hollingsworth acknowledges that he did not object to any of the allegedly improper statements or testimony, but attempts to avoid the effects of his waiver by arguing that fundamental error occurred. "The fundamental error exception is 'extremely narrow, and applies

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444, 479 (1966).

only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010) (quoting *Matthews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). To be fundamental, the error "must either 'make a fair trial impossible' or constitute 'clearly blatant violations of basic and elementary principles of due process.'" *Id*. (quoting *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009)). The exception applies "only in 'egregious circumstances.'" *Id*. at 694–95 (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)).

[7] Hollingsworth has failed to establish error, much less fundamental error. It is true that the State may not use statements from a custodial interrogation unless the defendant was warned of his Fifth Amendment "right to remain silent." *Miranda*, 384 U.S. at 444, 479. Because *Miranda* warnings implicitly assure a defendant "that silence will carry no penalty," the United States Supreme Court has held that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle v. Ohio*, 426 U.S. 610, 619–20 (1976).

[8] If no *Miranda* warnings are given and there is no custodial interrogation, the situation is very different:

> [T]he Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, *Jenkins v. Anderson*, 447 U.S. 231, 239, 100 S. Ct. 2124, 2129, 65 L. Ed. 2d

86 (1980), or after arrest if no *Miranda* warnings are given, *Fletcher v. Weir*, 455 U.S. 603, 606–607, 102 S. Ct. 1309, 1312, 71 L. Ed. 2d 490 (1982) (*per curiam*). Such silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty. *See* 447 U.S., at 239, 100 S. Ct., at 2129.

*Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993).

[9] In *Brecht*, the appellant was appealing from the Seventh Circuit's reversal of the District Court's grant of *habeas corpus* relief following his conviction for murder. *Id*. at 622–24. After shooting his victim in Wisconsin, Brecht fled the scene but soon drove his vehicle into a ditch. *Id*. at 624. A police officer stopped to offer assistance but Brecht told him that help was already on the way, so the officer left. Brecht then hitched a ride to Winona, Minnesota, where he was apprehended by police. *Id*. Although Brecht would later testify that the shooting was accidental, he said nothing along those lines to the officer who stopped to help him, the person who drove him to Winona, or the officers who apprehended him. *Id*. at 624–25. Brecht was given his *Miranda* rights at arraignment back in Wisconsin. *Id*. at 624. During trial, the prosecutor was allowed to ask Brecht during cross-examination if he had told anybody before trial that the shooting was an accident and made several references to Brecht's silence during closing argument. *Id*. at 625.

[10] The United States Supreme Court ruled that almost all of the prosecution's use of Brecht's pre-trial silence to impeach him was entirely proper:

> The first time petitioner claimed that the shooting was an accident was when he took the stand at trial. It was entirely

> proper—and probative—for the State to impeach his testimony by pointing out that petitioner had failed to tell anyone before the time he received his *Miranda* warnings at his arraignment about the shooting being an accident. Indeed, if the shooting was an accident, petitioner had every reason—including to clear his name and preserve evidence supporting his version of the events—to offer his account immediately following the shooting.

*Id*. at 628–29. To further highlight the difference between pre- and post-*Miranda* silence, the Court did take exception to comments on Brecht's silence after he was *Mirandized*, concluding that "it is conceivable that, once petitioner had been given his *Miranda* warnings, he decided to stand on his right to remain silent because he believed his silence would not be used against him at trial." *Id*. at 629.

[11] Here, Hollingsworth cannot establish that the use of his pre- or post-arrest silence against him constitutes a violation of his due process rights because there is no evidence that he ever received *Miranda* warnings, a "prerequisite[] for finding a constitutional violation." *Myers v. State*, 27 N.E.3d 1069, 1080 (Ind. 2015). Without the implicit assurance that his silence would carry no penalty, *see Doyle*, 426 U.S. at 618, Hollingworth has failed to establish the State violated his due process rights by using his silence against him. *See Brecht*, 507 U.S. at 628 (citing *Jenkins*, 447 U.S. at 239). For those accustomed to the prohibition against such use of a defendant's silence being in effect, the prosecutor's comments, especially, might be a bit jarring. *Brecht*, however, could not be more clear that *Miranda* warnings trigger the prohibition, and there is no evidence that they were given in this case.

[12] Hollingsworth seemingly wants this court to infer that *Miranda* warnings were given, despite the complete lack of evidence that they were. As the Indiana Supreme Court explained in *Myers*, however, "'[t]he party who alleges error has the duty to provide a proper record on appeal so that an intelligent review of the issues may be made,' and where there is no evidence in the record, 'appellate review is foreclosed.'" *Id.* (quoting *Fleenor v. State*, 514 N.E.2d 80, 87 (Ind. 1987)). Given the lack of evidence that *Miranda* warnings were administered in this case, to the extent that Hollingsworth invites us to infer that they were, we decline to do so. Hollingsworth has failed to establish any error in this regard, much less fundamental error.

[13] In any event, in light of the overwhelming evidence of Hollingsworth's guilt, we conclude that the comments on his silence, even if erroneous, did not prejudice him. "An error is deemed harmless if it has not prejudiced the substantial rights of the [party]." *Boyd v. State*, 650 N.E.2d 745, 748 (Ind. Ct. App. 1995), *trans. denied*. Gordon testified that Hollingsworth gouged his eye, causing him to see stars and feel very excruciating pain. Magana testified that Hollingsworth appeared to go after Gordon's eyes specifically.

[14] Moreover, State's Exhibit 5, which is a still image from surveillance footage of the incident, is entirely consistent with this testimony, clearly showing Hollingworth's thumb gouging Gordon's eye. While the image does not definitively establish that Hollingsworth intentionally gouged Gordon's eye, it certainly does not support Hollingsworth's testimony that he acted in self-defense, the gouging was accidental, or he grabbed Gordon's head only as a

means to break his fall. Exhibit 5 clearly shows that Hollingsworth is not being held by Gordon and is not falling, and Hollingsworth appears to be in a superior position. In light of the evidence admitted of Hollingsworth's guilt, we conclude that any error that might have occurred was harmless.

[15] We affirm the judgment of the trial court.

Baker, J., and Kirsch, J., concur.