366 N.E.2d 652 (1977)
William Jesse LAMAR, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 1075S301.
Supreme Court of Indiana.
August 30, 1977.
Rehearing Denied November 8, 1977.
*653 Jeffrey E. Hayes, Washington, for appellant (defendant below).
Theodore L. Sendak, Atty. Gen., Sheldon A. Breskow, Walter F. Lockhart, Deputy Attys. Gen., Indianapolis, for appellee (plaintiff below).
HUNTER, Justice.
Defendant-appellant, William Jesse Lamar, was charged with first degree murder by lying in wait in the death of Mary Ellen Griepenstroh.[1] After trial by jury, he was found guilty and sentenced to death. On appeal from that judgment, the following issues are presented for our review:
1. Did the trial court err in admitting testimony concerning an out-of-court declaration;
2. Did the trial court err in permitting testimony concerning a shotgun;
3. Was it improper for the trial court to fail to give a limiting instruction concerning the use of grand jury testimony;

*654 4. Was final instruction number nine properly given;
5. Did the trial court properly overrule the defendant's challenge to the jury array;
6. Did the trial court err by allowing the state to excuse three jurors for cause;
7. Is the Indiana provision for capital punishment unconstitutional?[2]
The facts most favorable to the judgment establish the following:
On December 24, 1974, at approximately 3:30 p.m., the victim was fatally shot as she left her car. The shooting occurred on the defendant's property in Dale, Indiana. The wound was inflicted by a slug fired from a 12 gauge shotgun. A spent shell with the name, Brenneke, printed on the casing was discovered in the shed from which the shot was determined to have been fired. A 12 gauge shotgun was found by officers in a mobile home on the defendant's property.

I.
It was the state's theory that the defendant shot and killed the victim, mistakenly believing her to be his ex-daughter-in-law, Linda Rudy. To prove its case, evidence was presented that the defendant knew the ex-daughter-in-law would be arriving at his home some time between 3:00 p.m. and 4:00 p.m. on Christmas Eve to pick up her son. Evidence also was adduced that there were particularly acrimonious feelings between the defendant and Rudy concerning the custody of the boy.
Mrs. Rudy arrived at the scene of the shooting and inquired whether her son was all right. After informing her that her son was safe, the state trooper told her that a woman had been shot. Mrs. Rudy then exclaimed, "Oh my God, that shot was meant for me!"
The trooper, to whom the statement was made, and Mrs. Rudy were allowed, over objection by the defense, to testify concerning the statement. Defense counsel argued that the statement was hearsay and inadmissible. The state countered that the statement was an excited utterance and, therefore, within an exception to the hearsay rule.
Mrs. Rudy was present in the court room and available for cross-examination; therefore, her in-court statement was not subject to hearsay objection. Patterson v. State, (1975) 263 Ind. 55, 324 N.E.2d 482.
The testimony of the state trooper was merely corroborative of Mrs. Rudy's testimony. It is the law in Indiana that improperly admitted evidence that is only corroborative of competent and unrefuted evidence is not reversible error. Walker v. State, (1976) Ind., 349 N.E.2d 161; Chatman v. State, (1975) 263 Ind. 531, 334 N.E.2d 673. Therefore, any error which may have arisen by reason of the officer's testimony is rendered harmless.
On appeal, it is argued that Mrs. Rudy was not competent to render an opinion concerning for whom the shot was meant because she lacked firsthand knowledge of the event. However, this contention is waived due to the failure to raise these grounds during the trial. Strickland v. State, (1977) Ind., 359 N.E.2d 244.

II.
The second allegation of error arose from the introduction into evidence of testimony concerning the 12 gauge shotgun found in the house trailer on the property of the defendant. Underlying the objection is the contention that the weapon was not relevant due to the failure of the state to connect the shotgun either to the defendant or to the crime.
The defendant first argues that testimony about the weapon was irrelevant because he could not have transported the shotgun from the shed to the house trailer without being seen. Secondly, he asserts that the house trailer belonged to his son and his possession of the weapon had not been established. The final portion of this objection relates to the failure of the ballistics expert to identify the shotgun as the murder weapon.
*655 The test for relevancy is, "[D]oes the evidence offered render the desired inference more probable than it would be without the evidence". Pirtle v. State, (1975) 263 Ind. 16, 323 N.E.2d 634; McCORMICK, EVIDENCE, § 185 at 437. In Indiana if evidence tends to prove a material fact, even though its tendency is slight, it is admissible. Pirtle v. State, supra. Circumstantial evidence is sufficient to support the admission of a weapon into evidence. Musick v. State, (1976) Ind., 352 N.E.2d 717.
The evidence adduced by the state established: the victim was slain by a slug from a 12 gauge shotgun, a recently oiled 12 gauge shotgun was found in the trailer of the son of the defendant, the defendant had keys to the trailer, and shells bearing the same name as that found in the shed were found in the defendant's home. This evidence establishes a sufficient nexus to the defendant to permit the jury to hear the testimony. The deficiencies in the state's proof were arguments concerning the weight of the testimony and not its relevancy.
While it is true that the ballistics tests were inconclusive, this fact also goes to the weight of the evidence. See, Collins v. State, (Ind. 1977) 364 N.E.2d 750.

III.
While Amos Lamar, the defendant's son was testifying, the state used portions of his testimony before a grand jury to contradict the testimony he was giving during the defendant's trial. The defendant urges error in the failure of the trial court to give an instruction limiting the grand jury minutes for impeachment purposes.
In Patterson v. State, (1975) 263 Ind. 55, 324 N.E.2d 482, this Court addressed an almost identical situation. In that case, two women were present as witnesses and prior statements were allowed to be used at trial for impeachment purposes. The defendant urged error in the failure of the trial court to give a limiting instruction; we rejected that contention in this way:
"Miss Robinson and Mrs. Patterson were upon the witness stand at the time their out-of-court assertions were offered. Neither denied giving the statements attributed to her, nor did either profess ignorance of such statements. It was, therefore, not necessary for the truth of the out-of-court assertions to rest upon the credibility of persons not present and then subject to cross-examination concerning the statements. Under such circumstances, since the matters asserted were relevant to the issues, there was no reason to reject the statements, as substantive evidence, simply because they had been made at a time when the witnesses were not subject to cross-examination."
Patterson v. State, supra, at 484-485.
In the case at bar, the witness did not deny making the statement, nor did he profess ignorance of the statement. He was present and available as a witness for cross-examination by the defendant. The trial court did not err in failing to give the limiting instruction requested by the defendant.

IV.
The trial court gave the following instruction over defendant's objection:
"FINAL INSTRUCTION NO. 9
"Malice may be proved by direct evidence, such as prior threats, assaults, or seeking an opportunity to perpetrate the act. This is express malice.
"Malice may also be shown by evidence that the defendant deliberately used a deadly weapon in such a way as likely to produce death. In such case, the purpose to kill may be inferred from the act of killing.
"If the jury finds from the evidence, beyond a reasonable doubt, that the alleged killing was done purposely and without legal justification, excuse or reasonable provocation, then, the jury may infer malice on the part of the defendant from the intentional use of such deadly weapon in such manner as would produce death."
The defendant contends that the language, "[T]he jury may infer malice on the *656 part of the defendant," assumed his guilt and mandated to the jury that they find him guilty.
We find the instruction to be a correct statement of the law. It is correct that malice may be inferred from the use of a deadly weapon in a manner likely to produce death. Jones v. State, (1970) 253 Ind. 456, 255 N.E.2d 105. The jury was instructed that if from the evidence beyond a reasonable doubt it found that the killing occurred with the use of a deadly weapon, then it could infer malice. The court instructed the jury as to its duty concerning reasonable doubt and the presumption of innocence on the part of the defendant. We find that no error occurred by virtue of the giving of final instruction number nine.

V.
The defendant next challenges the array of the juror panel. The argument is as follows: The panel was selected from the list of registered voters. There exists in Daviess County a large number of Amish residents who do not vote and the manner of jury selection, therefore, excludes members of the Amish religion from jury service.
The identical question has previously been treated by this Court. In Taylor v. State, (1973) 260 Ind. 264, 295 N.E.2d 600 (Justice DeBruler, dissenting), we held the practice of selecting jurors from registered voters was permissible absent a showing of a deliberate attempt to exclude certain groups from jury participation. No showing has been made, and we believe our original position to be correct.

VI.
Over the objection of the defendant, three jurors were challenged for cause by the state and excluded from the panel by the trial court. The first, Juanita Seneff, was challenged because one of the attorneys for the defendant had recently drawn wills for the prospective juror and her husband. The other two jurors were excused because they expressed some reluctance or objection to the death penalty.
Indiana by statute sets forth several grounds for challenging prospective jurors.[3] Although an attorney-client relationship is not enunciated as one of the causes for challenge, this Court has recognized the legitimacy of such a challenge. Klinck v. State, (1932) 203 Ind. 647, 179 N.E. 549. In Klinck, the prosecutor had been the executor of the estate of the juror's mother-in-law and the juror and his wife had been heirs. The court held that relationship was not sufficient to create a conclusive presumption of bias requiring the disqualification of the juror. It stated further that the determination of a juror's competence upon challenge for cause was within the trial court's discretion.
In the case before us the trial court held that Mrs. Seneff should not be permitted to remain as a juror. Due to the relationship enjoyed by an attorney and his client, it is our belief that the trial court did not abuse its discretion in removing Mrs. Seneff.
The state challenged two jurors based upon their hesitance concerning the death penalty. The following exchanges occurred during voir dire:
[EXAMINATION OF MRS. PAULEY BY THE STATE.]
Q. "Mrs. Pauley, do you understand that if the State of Indiana proves the defendant guilty of First Degree Murder that the only way that you could fulfill your duty as a juror if you were so selected under the oath that you would take would be by voting for a guilty verdict?"
A. "Yes."
Q. "Do you understand that if the defendant is found guilty as charged, that being guilty of First Degree Murder, the sentence to be imposed is the death sentence?"
A. "Yes."
Q. "If you were selected as a juror, if you are one of the final 12 to be *657 selected, and if the State of Indiana proves the defendant guilty beyond a reasonable doubt of First Degree Murder, could you vote for a guilty verdict knowing that that verdict could sentence the defendant to death?"
A. "No, I couldn't."
Q. "You could not?"
A. "No."
Q. "In other words then, are you telling me that you would not be willing to consider all the penalties prescribed by the laws of the State of Indiana in your deliberations?"
OBJECTION BY MR. JOHN BURLEY SCALES, Attorney for the defendant: "Objection to the question, Your Honor."
MR. WILLIAM E. HUDSON, II, Deputy Prosecuting Attorney: "I haven't finished the question."
Q. (continued) "Specifically referring to the death penalty?
OBJECTION BY MR. JOHN BURLEY SCALES, Attorney for the defendant: "Objection to the question."
THE COURT: "Objection overruled."
Q. "Mrs. Pauley, please answer the question."
A. "In some cases, I believe I could, but in some cases I don't believe I could."
Q. "Mrs. Pauley, are you saying that sometimes you might be willing to consider all of the penalties and sometimes you would not be willing?"
A. "Each time it would be a different situation."
Q. "You have heard the reading of the indictment, have you not?"
A. "Yes."
Q. "If the State of Indiana did prove the defendant guilty beyond a reasonable doubt of First Degree Murder as he has been charged in the indictment, and when you went into your deliberations would you be willing in this case to consider all of the penalties prescribed by the laws of the State of Indiana, specifically referring to the death penalty?"
Defense counsel and the prosecuting attorney then presented arguments concerning the merits of the state's challenge of Mrs. Pauley.
[EXAMINATION OF MRS. ESSIG BY THE STATE.]
Q. "Mrs. Essig, do you understand that it is the law of the State of Indiana that if the State of Indiana proves the defendant guilty of First Degree [Murder] and if you were selected as a juror under that oath that you would take, that it would be your duty to follow your oath and return a guilty verdict?"
A. "Yes."
Q. "Do you also understand that is the law of the State of Indiana that if the defendant is found guilty as charged, that being guilty of First Degree Murder, the sentence to be imposed is the death sentence?"
A. "Yes."
Q. "And, Mrs. Essig, if you were so selected as a juror, and if the State of Indiana proved the defendant guilty beyond a reasonable doubt of First Degree Murder, could you vote for a guilty verdict knowing that verdict could sentence the defendant to death?"
A. "I would not."
Q. "You would not. In other words then, are you telling me that you would not be willing to follow the law of the State of Indiana and consider all of the penalties  "
MR. RICHARD C. RUSK, Attorney for the defendant: "Show our objection."
Q. "I haven't finished.  One of which is the death penalty?"
A. "No."
THE COURT: "Would you repeat the question and we will show the objection carried down."

*658 Q. "Mrs. Essig, what I am asking, are you telling me that you are not willing to consider all of the possible penalties that are prescribed by the laws of the State of Indiana, one of which is the death penalty?"
A. "I would consider."
Q. "You would? Okay. Just a moment ago I asked you a question and it was to the effect that it were [if you were] selected as a juror and if the State of Indiana proved the defendant guilty beyond a reasonable doubt of First Degree Murder, could you vote for a guilty verdict knowing  "
Again, defense objected to the questions and a long discussion followed concerning the challenge to Mrs. Essig.
The Supreme Court held that a defendant may not be sentenced to death if the jury was chosen by excluding veniremen simply because they possessed a general objection or conscientious or religious belief against its infliction. Witherspoon v. Illinois, (1968) 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. In two later decisions, the Supreme Court recognized that a juror might be willing to follow the law over a personal objection to the death penalty:
"Yet it is entirely possible that a person who has a `fixed opinion against' or who does not `believe in' capital punishment might nevertheless be perfectly able as a juror to abide by existing law  to follow conscientiously the instructions of a trial judge and to consider fairly the imposition of the death sentence in a particular case."
Boulden v. Holman, (1969) 394 U.S. 478 at 483-484, 89 S.Ct. 1138, 1141-1142, 22 L.Ed.2d 433, at 438-439; (citing Witherspoon, supra, 391 U.S. at 516, n. 6, 88 S.Ct. 1770).
Again citing Witherspoon, the Boulden court held that the most that can be demanded of a venireman is that he be willing to consider all of the penalties provided by state law and that he not be irrevocably committed to vote against the death penalty prior to trial.
This Court explicitly followed Witherspoon and its progeny in Monserrate v. State, (1971) 256 Ind. 623, 271 N.E.2d 420.
The case before us is an example of the difficulty the trial court faces in application of Witherspoon. On the one hand, the juror declares no she could not vote for a guilty verdict knowing that the result would be a sentence of death. On the other hand when asked whether she could consider the full penalties prescribed by law, the prospective juror states that it would depend upon the circumstances of each case.
This express statement followed by the equivocal answer places the trial court in a dilemma. The first reply clearly supports the exclusion; while the latter would seem to fall within the ambit of Witherspoon.
The error which the trial court committed was its failure to pursue the matter further. What must be determined is whether the juror, notwithstanding his beliefs or scruples, would be able to impartially consider the issues with respect to the defendant's guilt; and after having done so, can he consider all the penalties provided by law. In neither instance was this done. Upon the equivocation the court permitted the challenge. This was improper.
Witherspoon and Boulden both stated that the impropriety of the exclusion of prospective jurors did not render the conviction invalid, but rather prevented the execution of the death sentence. Therefore, in view of our finding in regard to the death penalty, any error is harmless.

VII.
The defendant challenges the constitutionality of the death penalty. This Court has determined that the capital punishment provision of Ind. Code § 35-13-4-1 (Burns 1975) is unconstitutional. French v. State, (1977) Ind., 362 N.E.2d 834; Fair v. State, (Ind. 1977) 364 N.E.2d 1007. The death sentence must be vacated and a sentence of life imprisonment entered upon the conviction. Ind.Const., Art. 7, § 4; Fair v. State, supra; French v. State, supra.
*659 Now, therefore, this cause is remanded with instructions to vacate the death sentence and to enter a sentence of life imprisonment.
GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.
NOTES
[1] Ind. Code § 35-13-4-1(b)(6)(i) (Burns 1975).
[2] Id.
[3] Ind. Code § 35-1-30-4 (Burns 1975).