BOEHM, Justice.
 

 Freddie L. Byers, Jr. was convicted of two counts of murder, one count of attempted murder, and one count of robbery as a Class B felony. He was sentenced to the maximum term of years for each count, to be served consecutively, for a total sentence of 200 years imprisonment. In this direct appeal, he contends that the trial court erred by: (1) excusing the only African-American on the jury panel for cause, (2) allowing testimony and a photograph from a prior arrest into evidence, (3) admitting a photograph of allegedly “gruesome” knife wounds to one of the victim’s neck into evidence, and (4) instructing the jury on the issue of inconsistent statements made by a witness. We affirm the trial court.
 

 Factual and Procedural Background
 

 Byers, known to some as “Flint,” was convicted of murdering Bennie Spears and James Edison and attempting to murder Almeka Dodds. Spears and Dodds lived in a South Bend home with their two children, ages one and two. Edison was visiting the home in the late afternoon of January 30, 1997, when a knock was heard at the door. Dodds recognized the two visitors as “Flint” and “Gill.” Flint was a friend of Spears who had previously been to the home “[a] whole bunch of times,” but Dodds had met Gill only “[a] couple of times” and he had never previously been to the home. Dodds went to the dining room where she heard Spears tell
 
 *1126
 
 Flint not to point a gun at him, then heard a gunshot. When she turned around, she could see that Spears had been shot and Flint was holding a gun.
 

 After Flint grabbed Dodds by the hair and asked where the money was, Dodds l'etrieved cash hidden in the living room sofa. Meanwhile, Flint told Gill to lock the children in the bathroom, get a knife from the kitchen, and cut Edison’s neck. Gill complied. Flint then told Gill to take Dodds to the basement and shoot her twice in the head. As Dodds was being taken to the basement, Edison got up from the floor and tried to escape through a window. A neighbor saw Edison “fly[ ] out of the window” then fall to the . ground. As he rose, Edison was shot in the head. The neighbor drove to a pay phone and called 911. Flint or Gill then fired shots into the basement, where Dodds “tried to hide until [she] could stop hearing gunshots.” After Dodds believed the intruders had left the house, she ran to a neighbor’s house. When police arrived, they found the two children locked in the bathroom. Spears and Edison both died of gunshot wounds.
 

 Dodds supplied the police only with the names “Flint or Fred” and “Gill.” However, she also said that the police should have a picture of Flint from an “incident” that occurred at the home of Flint’s girlfriend Yolanda a few months earlier on the evening of the Tyson/Holyfleld fight. The police identified Byers as a person who had been arrested at that time and place. They then assembled photo arrays from which Dodds identified Byers as Flint. Based largely on Dodds’ 'testimony and identification, Byers was charged, tried and convicted.
 

 I. Excusing a Juror for Cause
 

 Byers first contends that the trial court erred when it excused the only African-American prospective juror for cause. During voir dire, the juror stated that he had been previously represented by Byers’ trial counsel in a criminal case in which he pleaded guilty to trespass. He felt that he “was treated unfairly” in that ease by the police, agreed that serving as a juror in the case “might” present a problem, and stated that if he were the defendant having someone in his position serve as a juror would probably be a “plus on my side.”
 

 Trial courts have the inherent discretion to excuse prospective jurors and abuse that discretion only when it is exercised in an illogical or arbitrary manner.
 
 Owens v. State,
 
 659 N.E.2d 466, 476 (Ind.1995) (citing
 
 Campbell v. State,
 
 547 N.E.2d 843, 844 (Ind.1989)). This Court has previously held that a trial court did not abuse its discretion by excusing a prospective juror for cause solely because one of the attorneys for a party had recently drawn wills for the prospective juror and her husband.
 
 Lamar v. State,
 
 266 Ind. 689, 696, 366 N.E.2d 652, 656 (1977). In this case, the attorney-client relationship is at least as problematic because of the closer similarity between this proceeding and the one in which defense counsel had represented the juror. Moreover, the excused juror also indicated that he had not been treated fairly by the police and that his service would probably be a “plus” for Byers, both suggesting an inability to be impartial beyond extending Byers his constitutional presumption of innocence.
 
 See
 
 IND. Code § 35-37-l-5(a)(11) (1998) (listing “[t]hat the person is biased or prejudiced for or against the defendant” as one of fifteen “good causes for challenge to any person called as a juror in any criminal trial”).
 
 [1]
 
 Under these circumstances, the trial court did not abuse its discretion by excusing the juror.
 

 II. Prior Arrest
 

 Byers next argues that the trial court erred by allowing State’s witnesses to testify about his prior arrest on an unrelated charge. Evidence Rule 404(b) provides in part: “Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes[.]” The rule is designed to prevent the jury from making the “forbidden inference” that prior wrongful
 
 *1127
 
 conduct suggests present guilt.
 
 Barker v. State,
 
 695 N.E.2d 925, 930 (Ind.1998). In order for this evidence to be admissible, “the court must (1) determine that the evidence is relevant to a matter at issue other than the defendant’s propensity to commit the charged act, and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.”
 
 Id.
 
 These issues are reviewed for an abuse of discretion.
 
 Thompson v. State,
 
 690 N.E.2d 224, 233 (Ind.1997).
 

 Evidence relating to Byers’ prior arrest was highly relevant to Dodds’ identification of Byers as the perpetrator. When Dodds initially spoke to police she knew Byers only as “Flint or Fred,” but told the police that they should have a picture of him from an “incident” that occurred on the night of the Tyson/Holyfield' fight at a “house on Birdsell Street” where Flint’s girlfriend Yolanda lived. Based on this information, the police located an arrest report from that evening, as well as four photographs of men arrested during the incident. The police then created four separate six-person photo arrays of individuals similar in appearance to each of the four photographs from the Bird-sell Street incident. These four arrays were then shown to Dodds, who identified Byers as the person known to her as Flint. Testi- • mony regarding the prior incident was relevant and necessary to explain the eventual identification of Byers, and highly probative because it corroborated Dodd’s testimony that she knew “Flint,” and that Byers was “Flint.”
 

 Second, the probative value of the photograph was not substantially outweighed by the danger of unfair prejudice. As explained above, testimony relating to the prior arrest was necessary to explain the eventual identification of Byers through a photo array. As to any potential for prejudice, the trial court specifically admonished the jury that
 

 this information about another incident, whatever it was, and there being an arrest, if you do conclude—if you accept that testimony and if you do conclude that that gave rise to a picture that was used and has or has not been identified here in court, that other incident if you find that it generated a picture and it was of the Defendant, if that’s what you find, and I’m not saying you will. But if you do, that other incident should not be used by you—first of all, you don’t even know what it was about. Secondly, an arrest doesn’t mean that anybody did something. It means the police arrested somebody. And third and most important, it is very important that you know that you cannot use the possibility that there had been some other contact with law enforcement as evidence here that the Defendant did anything wrong in these charges. So to suggest, okay, well, if he was arrested on that day, that means it is more likely that he did something this time. No, no, no, you can’t use that [at] all for that purpose, at all. All it is here for, if you find that it’s relevant, is as explaining how the police may or may not have come up with some pictures.
 

 This admonishment minimized the possibility that the jury would make the “forbidden inference.” In addition, the trial court specifically prohibited the State from eliciting any information as to the nature or outcome of the prior arrest.
 
 [2]
 
 The probative value of this evidence was not substantially outweighed by the danger of unfair prejudice from the jury learning of Byers’ earlier arrest for this undefined offense. The trial court did not err by allowing witnesses to testify about the Birdsell Street incident.
 

 Byers also contends that the trial court erred in admitting the actual photo arrays from which he was identified by Dodds. According to Byers, “[b]y allowing the mug shots into evidence, the jury was allowed more than enough information to infer that Byers had been previously arrested.... There was simply no reason for the inclusion of the pictures into evidence other than to prejudice Byers.” The trial court observed that the jury had already heard testimony, over objection, that photographs were taken in conjunction with arrests on the evening of the Tyson fight. The admission of
 
 *1128
 
 the photo arrays added no prejudicial inference that was not already created by the testimony of the prior arrest. The probative value of the photographs was not substantially outweighed by the potential for prejudice, and the trial court did not err by admitting them.
 

 III. “Gruesome” Photograph
 

 Byers next argues that the trial court erred in admitting State’s Exhibit 23, a photograph taken of Edison at the crime scene that depicted knife wounds on his neck. Defense counsel objected to the exhibit on the grounds that it was “gruesome,” “inflammatory,” and “unduly prejudicial.” The trial court overruled the objection.
 
 [3]
 

 [10-13] We review the admission of photographic evidence for an abuse of discretion.
 
 Humphrey v. State,
 
 680 N.E.2d 836, 842 (Ind.1997). To constitute error, the probative value of the photograph must be “substantially outweighed by the danger of unfair prejudice^]” Ind. Evidence Rule 403;
 
 see also Bufkin v. State,
 
 700 N.E.2d 1147, 1149 (Ind.1998). The photograph was identified by a police officer who testified that it depicted “Mr. Edison with the two cut marks to the neck area.” The photograph was taken after the medics and the officer turned over Edison, who had been lying facedown in the snow. In addition, the photograph corroborated the testimony of Dodds, who saw “Gill” cutting Edison’s neck with a kitchen knife at Byers’ direction. “Even gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally.”
 
 Amburgey v. State,
 
 696 N.E.2d 44, 45 (Ind.1998);
 
 see also Woods v. State,
 
 677 N.E.2d 499, 504 (Ind.1997).
 
 [4]
 
 Because any potential for prejudice does not substantially outweigh the photograph’s probative value, the trial court did not abuse its discretion by admitting the photograph.
 

 IY. Jury Instruction
 

 As a final point, Byers contends that the trial court erred when it removed one sentence dealing with alleged inconsistencies in Dodds’ testimony from one of his tendered final instructions. The tendered instruction read as follows:
 

 The credibility of a witness may be attacked by introducing evidence that on some former occasion the witness made a statement inconsistent with his testimony in this case. It is inconsistent if the witness denied making the prior statement. Evidence of this kind may be considered by you in deciding the weight to be given the testimony of the witness.
 

 Over Byers’ objection, the trial court deleted the second sentence because Dodds had not denied making the prior statements but rather consistently testified that she did not remember making the prior statements. Indeed, with one exception Dodds stated “I don’t recall” or “I don’t remember” when asked about several specific details of the crime.
 

 A trial court erroneously refuses a tendered instruction when: (1) the instruc
 
 *1129
 
 tion correctly sets out the law; (2) evidence supports the giving of the instruction; and (3) the substance of the tendered instruction is not covered by the other instructions given.
 
 Legue v. State,
 
 688 N.E.2d 408, 411 (Ind.1997). The same holds true when a trial court refuses part of a tendered instruction. In this case, the trial court deleted one sentence that was not supported by the evidence, and the general issue of Dodds’ credibility is covered by the two sentences that remain. The trial court did not err by modifying Byers’ instruction.
 

 Conclusion
 

 The judgment of the trial court is affirmed.
 

 SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.
 

 [1]
 

 . As
 
 Lamar
 
 makes clear, the statutory list of factors is not exhaustive. 266 Ind. at 696, 366 N.E.2d at 656 ("Although an attorney-client relationship is not enunciated as one of the causes for challenge, this Court has recognized the legitimacy of such a challenge.”) (citing
 
 Klinck v. State,
 
 203 Ind. 647, 179 N.E. 549 (1932)).
 

 [2]
 

 . In discussing the 404(b) evidence prior to the start of-the trial, the trial court stated: "There’s not going to be one word from any of the officers about what was going on or why these people got arrested or what the possible charges were going to be, none at all.”
 

 [3]
 

 . The State first offered Exhibit 23 during the testimony of South Bend Police Officer Steven Hammer. At that time, defense counsel had no objection and the exhibit was admitted into evidence. Later in the trial, the State asked Dr. Michael Gerald Quinn, the pathologist who performed the autopsies of Edison and Spears, if State’s 23 "fairly and accurately show[s] James Edison the way you saw him?” At a sidebar conference, the trial court stated that "23 was already admitted, I believe,” but the State believed tire exhibit had only been "identified” earlier and not admitted. The trial court then entertained Byers' objection and overruled it. Although certainly not required to do so, trial courts have the authority to reconsider rulings on (he admissibility of evidence prior to an exhibit being passed to the jury. Under these circumstances, Byers' belated objection preserved the issue for our review, as the State concedes.
 

 [4]
 

 . Because the photograph was later identified by the pathologist who performed the autopsy as being an accurate depiction of Edison, Byers argues that the photograph was "in the nature of an autopsy photograph” and therefore inadmissible because the knife wounds shown in the photograph were not relevant to the finding of the cause of death. Byers cites
 
 Grimes v. State,
 
 450 N.E.2d 512, 516 (Ind.1983) for the proposition that "[a]utopsy photographs are admissible when relevant to a victim’s cause of death and illustrative of a witness' testimony.” A pathologist's testimony regarding a crime scene photograph does not transform it into an autopsy photograph. Evidence Rule 403, not
 
 Grimes,
 
 controls the determination of its admissibility.