ATTORNEY FOR APPELLANT ATTORNEYS FOR APPELLEE
Timothy E. Stucky Karen M. Freeman-Wilson
Blume, Connelly, Jordan & Stucky Attorney General of Indiana
Fort Wayne, Indiana
 Arthur Thaddeus Perry
 Deputy Attorney General
 Indianapolis, Indiana

 In The
 INDIANA SUPREME COURT

 )
DAVID E. CORBETT, )
 Defendant-Appellant, )
 )
 v. ) 02S00-0004-CR-260
 )
STATE OF INDIANA, )
 Plaintiff-Appellee. )
 )
 ________________________________________________

 APPEAL FROM THE ALLEN SUPERIOR COURT
 The Honorable John F. Surbeck, Jr., Judge
 Cause No. 02D04-9904-CF-215
 ________________________________________________

 On Direct Appeal

 March 19, 2002

DICKSON, Justice
 The defendant, David E. Corbett, was convicted of murder[1] and
robbery[2] for the incidents surrounding the slaying of Edwin Massengill on
April 20, 1999 in Fort Wayne, Indiana.[3] The trial court sentenced the
defendant to eighty-five years imprisonment. In his appeal, the defendant
asserts five grounds: (1) insufficient evidence; (2) erroneous admission
of autopsy photographs; (3) improper transferred intent jury instruction;
(4) errors in findings of aggravating and mitigating circumstances; and (5)
manifestly unreasonable sentence. We affirm the defendant's convictions
and sentence.

 Sufficiency of the Evidence
 The defendant claims the evidence introduced at trial was
insufficient to support his convictions. Specifically, although he admits
that he fatally struck Massengill with a sledgehammer and took the victim's
wallet and handgun, the defendant claims that the State failed to prove the
element of intent as to each of the charged offenses. The defendant
contends that the only evidence on this issue came from a witness, Joseph
Davis, whose testimony was incredibly dubious.
 In addressing a claim of insufficient evidence, an appellate court
must consider only the probative evidence and reasonable inferences
supporting the judgment, without weighing evidence or assessing witness
credibility, and determine therefrom whether a reasonable trier of fact
could have found the defendant guilty beyond a reasonable doubt. Marcum v.
State, 725 N.E.2d 852, 863 (Ind. 2000). Under the "incredible dubiosity"
rule, however, a reviewing court may impinge on the fact-finder's
responsibility to judge witness credibility when "a sole witness presents
inherently contradictory testimony which is equivocal or the result of
coercion and there is a complete lack of circumstantial evidence" of the
defendant's guilt. Tillman v. State, 642 N.E.2d 221, 223 (Ind. 1994);
accord Lee v. State, 735 N.E.2d 1169, 1173 (Ind. 2000); White v. State, 706
N.E.2d 1078, 1079-80 (Ind. 1999).
 Davis's testimony does not fit into the incredible dubiosity rule.
While inconsistencies exist between witness Davis's statement to police and
his trial testimony, they do not render his testimony inherently
contradictory as a result of coercion. Further, the convictions were not
based solely on Davis's testimony. The defendant admitted to police that
he and Davis had gone to the victim's home and that, when the victim and
Davis ignored the defendant's demand that they stop arguing, he threw a
hammer, intending to hit Davis but striking Massengill instead. In
addition, the pathologist testified that the victim was probably struck
three times in the head. The jury could have easily inferred that striking
a man in the head three times with a sledgehammer was intentional and not
accidental. Sufficient evidence was presented to establish the element of
intent for the defendant's convictions of murder and robbery.

 Autopsy Photographs
 The defendant challenges the admission of 26 photographs taken
immediately before, during and after the autopsy performed on the decedent,
Edwin Massengill. We recently stated the standard of review for admission
of photographic evidence:
 Because the admission and exclusion of evidence falls within the sound
 discretion of the trial court, this Court reviews the admission of
 photographic evidence only for abuse of discretion. Byers v. State,
 709 N.E.2d 1024, 1028 (Ind. 1999); Amburgey v. State, 696 N.E.2d 44,
 45 (Ind. 1998). Relevant evidence, including photographs, may be
 excluded only if its probative value is substantially outweighed by
 the danger of unfair prejudice. Ind.Evidence Rule 403; Byers, 709
 N.E.2d at 1028. "Even gory and revolting photographs may be
 admissible as long as they are relevant to some material issue or show
 scenes that a witness could describe orally." Amburgey, 696 N.E.2d at
 45; see also Byers, 709 N.E.2d at 1028. Photographs, even those
 gruesome in nature, are admissible if they act as interpretative aids
 for the jury and have strong probative value. Spencer v. State, 703
 N.E.2d 1053, 1057 (Ind. 1999); Robinson v. State, 693 N.E.2d 548, 553
 (Ind. 1998).

Swingley v. State, 739 N.E.2d 132, 133 (Ind. 2000). Autopsy photos often
present a unique problem because the pathologist has manipulated the corpse
in some way during the autopsy. Autopsy photographs are generally
inadmissible if they show the body in an altered condition. Allen v.
State, 686 N.E.2d 760, 776 (Ind. 1997), cert. denied, 525 U.S. 1073, 119
S.Ct. 807, 142 L.Ed.2d 667 (1999). But Swingley recognizes that "there are
situations where some alteration of the body is necessary to demonstrate
the testimony being given." 739 N.E.2d at 133-34. In Fentress v. State,
702 N.E.2d 721 (Ind. 1998), a case similar to the one before us today, we
held admissible two photographs that depicted the victim's skull with the
hair and skin pulled away from it. Because the pathologist had explained
what he had done and the alteration was necessary to determine the extent
of the victim's injuries, we found that the "potential for confusion [was]
minimal" and that the probative value outweighed the prejudicial effect.
Fentress, 702 N.E.2d at 722.
 In this case, eleven of the photographs depict the body before the
autopsy (Exhibits 42-48, 49-50, 66-67). Two additional photographs show
one of the head wounds cleaned and with some hair shaved away. The
admission of these photographs was not error. See Loy v. State, 436 N.E.2d
1125, 1128 (Ind. 1982)(holding photographs that depict victim in natural
state after death admissible). In fact, these photographs are fairly tame
for a murder case. The rest of the challenged photographs depict various
stages of the autopsy.
 Exhibits 51, 52, and 53 depict the victim's head with the skin and
hair pulled back from the skull. The pathologist stated this was necessary
to determine the extent of the injuries, and he explained the procedure he
undertook. These photographs are akin to the ones in Fentress. Two of the
photographs, however, Exhibits 51 and 52, are problematic. In addition to
depicting the victim's head and wounds, these pictures show the hollow
shell of the victim's body, which greatly and unnecessarily enhances the
gruesomeness of the pictures. These two photographs, although relevant to
the cause of death and the disputed issue of the number of blows, were so
prejudicial that the trial court abused its discretion in allowing them to
be admitted.
 Exhibit 54, a close-up of the victim's head, shows part of the brain
exposed. The pathologist explained the photo shows the effects of external
blunt force trauma. Record at 620-21. Exhibit 55 depicts a fracture in a
portion of the skull, which has been removed from the victim's head. The
pathologist explained how he removed this portion and highlighted the
fracture to the jury. Record at 621-23. It was not error to admit these
two exhibits. It was error, however, to admit Exhibit 56 because, although
the portion of the skull depicted in Exhibit 55 is in the foreground, the
photograph focuses on the hollow shell of the victim's body. The probative
value of Exhibit 56 is outweighed by its unfair prejudicial effect.
 Exhibits 57 and 58 depict the base of the skull with the brain
removed. As the pathologist explained the alteration he had made and the
need to show the extent of the victim's injuries, the trial court did not
err in allowing the admission of these photographs. The same is true of
Exhibit 59, which depicts a portion of the skull against the edge of a
table to show how a hard surface could produce the fracture. The
pathologist also testified that Exhibit 11, a sledgehammer (the alleged
murder weapon), could have caused the fractures pictured in Exhibit 59.
Record at 632-33.
 Exhibits 60, 61 and 63 depict the victim's brain removed from his
skull. While these pictures do indicate trauma to the brain consistent
with an external blunt force trauma, the photographs are cumulative and
their prejudicial effect outweighs their probative value. It was error to
allow them to be admitted. In the same way, Exhibits 64 and 65 should have
been excluded. These photographs depict the hollow shell of the victim and
focus on his ribs. The probative value of these pictures was slight as the
existence of broken ribs was not a material issue and their unfair
prejudicial effect is high given their gruesomeness. It was error not to
exclude these exhibits.
 Finding that the trial court erred in admitting some photographs is
not enough to warrant reversal, however. Errors in the admission or
exclusion of evidence are to be disregarded as harmless error unless they
affect the substantial rights of the party. Ind.Trial Rule 61; Fleener v.
State, 656 N.E.2d 1140, 1141 (Ind. 1995). To determine whether an error in
the introduction of evidence affected the appellant's substantial rights,
this Court must assess the probable impact of that evidence upon the jury.
Alva v. State, 605 N.E.2d 169, 171 (Ind. 1993).
 The defendant does not demonstrate how the erroneous admission of
some of the photographs affected his substantial rights. Under the
defendant's version of events, he threw the hammer at another man, Davis,
and accidentally struck Massengill in the head. After attempting to render
first aid, the defendant states he panicked and took the victim's wallet
and a handgun. The only evidence that corroborates the defendant's story
is that a pillow was found under the victim, a bottle of hydrogen peroxide
was found near his head, and blood had been wiped from under the victim's
nose. It is undisputed that the defendant took the hammer with him and was
in possession of two rifles, which he claimed Davis took. The pathologist
wrote in his report and testified at trial that the victim suffered more
than one and probably three blows to the head. We find it highly
improbable that the six erroneously admitted photographs influenced the
jury from believing the defendant's highly improbable version of events.
The probable impact of the erroneous admission of the photographs did not
affect the defendant's substantial rights, and the error in admitting the
exhibit must be disregarded as harmless.

 Transferred Intent Instruction
 The defendant next contends that the trial court erred in giving the
jury an instruction on transferred intent. Over objection, the trial court
gave the State's tendered instruction on the doctrine of transferred
intent:
 If one intends to injure or kill a person with a deadly weapon,
 and by mistake or inadvertence injures or kills another person with
 such weapon, his intent is transferred from the person to whom it was
 directed to the person actually injured, and he may be found guilty of
 murder of the person who was killed.
 You may find a person guilty of murder of a person who was
 killed, even if you find that person intended to kill another.

Record at 159. The defendant contends the trial court erred in giving this
instruction because it was contrary to the State's theory, which asserted
that Davis was not in the house when Massengill was killed, and because it
created an improper mandatory presumption that the defendant acted with the
specific intent to kill Davis.
 In reviewing a trial court's decision to give or refuse tendered jury
instructions, the Court considers: (1) whether the instruction correctly
states the law; (2) whether there is evidence in the record to support the
giving of the instruction; and (3) whether the substance of the tendered
instruction is covered by other instructions which are given. Cutter v.
State, 725 N.E.2d 401, 408 (Ind. 2000); Wooley v. State, 716 N.E.2d 919,
926 (Ind. 1999).
 An instruction may deviate from the State's theory of the case as
long as it is supported by the evidence and is a correct statement of law.
See Hoskins v. State, 441 N.E.2d 419, 424-25 (Ind. 1982). The contested
instruction was supported by evidence that the defendant intended to kill
Davis rather than the victim. The defendant stated that he threw a hand-
held sledgehammer at Davis. The jury was instructed, "[t]he intent to kill
can be found from the acts, declarations, and conduct of the Defendant at
or just immediately before the commission of the offense and/or from the
nature of the weapon used." Record at 158. This instruction is a correct
statement of the law in Indiana. See Barany v. State, 658 N.E.2d 60, 65
(Ind. 1995). From the defendant's declaration that he threw a sledgehammer
at Davis, the jury could infer that the defendant intended to kill Davis.
The challenged instruction was supported by the evidence.
 The defendant also claims the instruction creates an improper
mandatory presumption that the defendant acted with the specific intent to
kill. By the language of the instruction, the jury was essentially told
that if the defendant, acting with the intent to kill Davis, accidentally
killed Massengill; the defendant may be found guilty of the murder of
Massengill. This is not a mandatory instruction. It permitted, but did
not require, the jury to find guilt.
 In addition, the defendant contends that the giving of the challenged
transferred intent instruction essentially alleged that the defendant had
attempted to murder Davis, and that the trial court was thus required to
instruct the jury on the specific intent for the
offense of attempted murder. The defendant did not tender any proposed
instructions addressing this issue. Record at 101-111. Nor did he object
on this basis at trial.[4] "No party may claim as error the giving of an
instruction unless he objects thereto . . . stating distinctly the matter
to which he objects and the grounds of his objection." Ind.Trial Rule
51(C). When objecting at trial to the giving of an instruction, a party is
not required to tender an alternative instruction if the party's objection
is sufficiently clear and specific to inform the trial court of the claimed
error and to prevent inadvertent error. Mitchell v. State, 742 N.E.2d 953,
955 (Ind. 2001). If a party is objecting to the failure to give an
instruction, however, a tendered instruction is necessary. Id.
 Not only is the defendant precluded from claiming on appeal that the
trial court should have given an instruction regarding specific intent for
attempted murder, but this claim does not qualify as fundamental error
authorizing review of this claim despite the defendant's failure to
establish that he properly raised the issue at trial.

 Aggravating and Mitigating Circumstances
 The defendant contends that the trial court erred in failing to find
mitigating circumstances and in finding the defendant's minimal criminal
history as a significant aggravating circumstance. The trial court
sentenced the defendant to sixty-five years for his murder conviction and
twenty years for his robbery conviction, and ordered the sentences to be
served consecutively.
 Sentencing decisions generally rest within the discretion of the
trial court, and are reviewed on appeal only for an abuse of discretion.
Monegan v. State, 756 N.E.2d 499, 501 (Ind. 2001). It is within the trial
court's discretion to determine whether a presumptive sentence will be
enhanced due to aggravating factors. Id. Because reasonable minds may
differ due to the subjectivity of the sentencing process, it is generally
inappropriate for us to merely substitute our opinions for those of the
trial judge. Hurt v. State, 657 N.E.2d 112, 114 (Ind. 1995).
 The defendant argues that the trial court erroneously found no
mitigating factors, notwithstanding evidence of the defendant's cooperation
with law enforcement by providing an incriminating voluntary statement, his
acceptance of responsibility for his admitted criminal conduct, his attempt
to render aid to the victim immediately after the fatal blows, his genuine
remorse for his conduct, and his untreated substance abuse problem. The
trial court's written sentencing order states, "Court finds that there are
no mitigating circumstances." Record at 176.
 Determining mitigating circumstances is within the discretion of the
trial court. Walter v. State, 727 N.E.2d 443, 448 (Ind. 2000); Legue v.
State, 688 N.E.2d 408, 411 (Ind. 1997). A trial court need not regard or
weigh a possible mitigating circumstance the same as urged by the
defendant. Monegan, 756 N.E.2d at 504. When a defendant alleges that the
trial court failed to identify or find a mitigating circumstance, the
defendant must establish that the mitigating evidence is both significant
and clearly supported by the record. Carter v. State, 711 N.E.2d 835, 838
(Ind. 1999). The trial court is not required to make an affirmative
finding expressly negating each potentially mitigating circumstance. Stout
v. State, 528 N.E.2d 476 (Ind. 1988); see also Walter, 727 N.E.2d at 448;
Legue, 688 N.E.2d at 411. The failure to find mitigating circumstances
that are clearly supported by the record, however, may imply that they were
overlooked and not properly considered. Jones v. State, 467 N.E.2d 681,
683 (Ind. 1984). In reviewing a sentencing decision in a non-capital case,
we are not limited to the written sentencing statement but may consider the
trial court's comments in the transcript of the sentencing proceedings.
Walter, 727 N.E.2d at 449.
 In this case the trial court's oral remarks at the conclusion of the
sentencing hearing demonstrate that, although concluding that none of the
things presented by the defense constitute mitigating circumstances, the
court discussed each of the proposed mitigating circumstances. Record at
201-02. The court noted that the defendant's "substance abuse may in fact
be a reason for committing the crime and it's not an excuse." Record at
201. As to his claim of cooperation with the law enforcement, after noting
that the defendant told the police an untruthful story, the trial court
stated, "I just don't think that there's any indication that he cooperated
with the police in any way." Record at 202. Likewise, the trial court
observed, "There's been no acceptance of responsibility" but rather a
significant effort "to minimize your responsibility." Id. The trial court
did not expressly discuss the defendant's assertion that mitigating
consideration should have been given for his care for the victim
immediately after striking the fatal blow. We find, however, that the
defendant's momentary aid, including the possible placement of a pillow
under the victim's head and possible use of hydrogen peroxide, but then
rummaging through the house and removing the victim's wallet and several
weapons, does not clearly constitute a significant mitigating circumstance.
 We find no error as to defendant's claim that the trial court failed to
find and consider mitigating circumstances.
 The defendant contends that the trial court erred "in placing
significant weight on the Defendant's minimal, remote, and nonviolent
criminal history." Br. of Appellant at 27. "Significance varies based on
the gravity, nature and number of prior offenses as they relate to the
current offense." Wooley v. State, 716 N.E.2d 919, 929 n.4 (Ind. 1999).
In Wooley, we held that "a criminal history comprised of a single,
nonviolent misdemeanor is not a significant aggravator in the context of a
sentence for murder." Id. at 929. The chronological remoteness of a
defendant's prior criminal history should be taken into account. Harris v.
State, 396 N.E.2d 674, 677 (Ind. 1979). However, "we will not say that
remoteness in time, to whatever degree, renders a prior conviction
irrelevant." Id. The remoteness of prior criminal history does not
preclude the trial court from considering it as an aggravating
circumstance. Bowling v. State, 493 N.E.2d 783 (Ind. 1986) (citing Perry
v. State, 447 N.E.2d 599, 600 (Ind. 1983)).
 The defendant was previously convicted of burglary in Arkansas in
1986 and grand theft in Idaho in 1983.[5] These past felony convictions
rise to the level of a significant aggravator in this case where the crimes
are murder and robbery. The trial court did not error when it found the
defendant's criminal history to be a significant aggravating factor.
 We conclude that the trial court thoughtfully exercised its
discretion in ordering that both presumptive sentences be enhanced and be
served consecutively.

 Manifestly Unreasonable Sentence
 The defendant also claims the trial court's imposed sentence was
manifestly unreasonable, as it was the maximum sentence permitted by law.
 Article 7, § 4 of the Indiana Constitution authorizes the review and
revision of criminal sentences imposed. This authority is implemented
through Indiana Appellate Rule 7(B), which provides: "The Court shall not
revise a sentence authorized by statute unless the sentence is manifestly
unreasonable in light of the nature of the offense and the character of the
offender."
 Here, the defendant smashed Edwin Massengill's skull with repeated
blows of a sledgehammer. As Massengill lay dying, the defendant rummaged
through the house stealing a handgun, two rifles, and the victim's wallet.
The defendant has prior convictions of burglary and grand theft. Given the
nature of the offense and the character of this offender, the sentence is
not manifestly unreasonable.

 Conclusion
 We affirm the judgment of the trial court.
 SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.

-----------------------
 [1] Ind.Code § 35-42-1-1.

 [2] Ind.Code § 35-42-5-1.
 [3] The defendant was also convicted of felony murder and theft, but
these two convictions were merged into the murder and robbery convictions
respectively at sentencing.
 [4] Following the presentation of evidence and before final
arguments, the trial court and counsel reviewed the trial court's intended
instructions, one by one. Record at 822-48. Our review of this colloquy
discloses no objection or argument by the defense on this issue. We note,
however, that at one point, when the defense stated that, "for purposes of
the record," it "oppose[s] any instruction on the transferred intent," the
trial court responded: "Oh, I understand that. And we'll give you time. .
. . I guess we're going through these now as a practical matter. What I'll
do is after we're done with closings, we'll let you make specific verbatim
objections to each instruction." Record at 841. The defendant does not
cite, nor do we find, any point in the record showing that further specific
objections were made.
 [5] The State also highlights the defendant's conviction for
misdemeanor driving under the influence in 1996.