## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 14 2017, 9:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Susan D. Rayl
Smith Rayl Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Keri Brewer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 14, 2017

Court of Appeals Case No.
49A04-1604-CR-785

Appeal from the Marion Superior Court

The Honorable Lisa F. Borges, Judge

Trial Court Cause No.
49G04-1405-MR-28156

**Barnes, Judge.**

# Case Summary

Keri Brewer appeals his conviction for felony murder. We affirm.

# Issues

Brewer presents four issues, which we consolidate and restate as:

I.     whether fundamental error occurred as a result of the admission of evidence that Brewer and his co-defendant had previously purchased marijuana from the victim; and

II.    whether fundamental error occurred as a result of three witnesses testifying regarding the victim's cell phone number.

# Facts

In May 2014, Patrick Martin was carrying $10,000 in cash and showing it to people. Martin and his friend, Aleem Thomas, sold drugs together. Thomas told Martin that he should not "be walking around bragging about [the money]." Tr. p. 33. On May 19, 2014, Thomas met Martin at Angela Kosarue's house because someone was going to buy drugs from Martin there. The men often sold marijuana at Kosarue's house. While they were at her house, Martin got a phone call and went outside. When he came back inside, Brewer and Mark Tyson were with him. Thomas had seen the men before and knew that they had purchased drugs from Martin on three or four occasions. Kosarue also recognized Tyson as someone she had seen talking to Martin about three times. Brewer was carrying a box cutter, and Tyson was carrying a shotgun. In the living room, Tyson pointed the gun at Thomas and told him

"to come off of everything." *Id.* at 44. Thomas gave him some marijuana and twenty dollars. Tyson also told Kosarue to give him everything, but she did not have anything to give him. Two of Kosarue's children, eleven-year-old P.P. and twelve-year-old K.P., heard noises and walked into the hallway. Tyson pointed the shotgun at them and told them to go back into their room. Tyson walked into the kitchen, where Brewer and Martin were located. Thomas heard Tyson tell Martin, "come up off everything. I know you got it. I know you got it." *Id.* at 47. Tyson then said, "Watch out, Bro. I'm about to get him up out of here," and shot Martin. *Id.* Tyson and Brewer then ran out of the house. During the investigation, investigators were able to connect Martin with Brewer and Tyson through cell phone and Facebook records. When presented with a photo array, Thomas, Kosarue, P.P., and K.P. each separately identified Tyson as the man with the shotgun. Thomas identified Brewer as the man with the box cutter.

[4]     The State charged Brewer with felony murder and Class A felony robbery. The jury found Brewer guilty as charged, and the trial court entered judgment of conviction for felony murder. The trial court sentenced Brewer to sixty years in the Department of Correction. Brewer now appeals.

# Analysis

## I. Evidence of Prior Marijuana Purchases

[5]     Brewer argues that fundamental error occurred when Thomas testified that he had seen Brewer and Tyson purchase drugs from Martin three or four times

prior to the shooting. According to Brewer, the evidence of prior bad acts was inadmissible under Indiana Evidence Rule 404(b). Brewer does not dispute that he failed to object to this evidence.

[6] The "[f]ailure to object at trial waives the issue for review unless fundamental error occurred." *Treadway v. State*, 924 N.E.2d 621, 633 (Ind. 2010). "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). "The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (internal quotation omitted). "This exception is available only in egregious circumstances." *Id.* (internal quotation omitted).

[7] Indiana Evidence Rule 404(b) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b). The State argues that the evidence was admissible to show motive and identity. In support of its argument, the State relies on *Wrencher v. State*, 635 N.E.2d 1095 (Ind. 1994), and *Byers v. State*, 709 N.E.2d 1024 (Ind. 1999), which we find persuasive.

[8] In *Wrencher*, the defendant was convicted of murder and attempted murder. The surviving victim, who identified the defendant, was a security guard and had knowledge of the defendant's drug dealing and imminent eviction. The defendant argued that the admission of his alleged drug dealing was inadmissible as a prior uncharged crime. Our supreme court held that the evidence was admissible "for the dual objective of demonstrating that [the victim] knew both Walker and [the defendant] from having seen them on previous occasions and also for the purpose of establishing a possible motive for the shooting . . . ." *Wrencher*, 635 N.E.2d at 1096.

[9] Similarly, in *Byers*, the defendant was convicted of murder, attempted murder, and robbery. The surviving victim testified that she knew the defendant as "Flint" and that he had been arrested a few months earlier at the home of his girlfriend. Police were able to determine that the defendant was the man arrested on the evening in question, and the victim then identified him in a photo array. The defendant argued that evidence of his prior arrest was inadmissible under Indiana Evidence Rule 404(b). Our supreme court held that "[e]vidence relating to Byers' prior arrest was highly relevant to [the victim's] identification of Byers as the perpetrator." *Byers*, 709 N.E.2d at 1027. The testimony was "relevant and necessary to explain the eventual identification of Byers, and highly probative because it corroborated [the victim's] testimony that she knew 'Flint,' and that Byers was Flint.'" *Id.*

[10] Here, Thomas testified that, although he did not know their names, he had seen Brewer and Tyson purchase drugs from Martin on three or four occasions.

After police connected Tyson and Brewer to the crime through cell phone and Facebook records, Thomas identified the men in photo arrays. As in *Wrencher* and *Byers*, Thomas's testimony was relevant to demonstrate both motive and the identity of Brewer and Tyson.[1] The admission of the testimony was not erroneous, much less fundamental error.

## II. Evidence of Martin's Cell Phone Number

Brewer next argues that fundamental error occurred by the admission of Martin's cell phone number through Thomas, Detective Greg Hagan, and Sergeant Mark Hess. During Thomas's testimony, the deputy prosecutor asked, "If I told you 317-***-****, does that sound correct?" Tr. p. 32. During the testimony of Detective Hagan, the deputy prosecutor questioned him regarding Martin's phone number and asked "Would that have been the ***-**** we have been talking about?" *Id.* at 369. Detective Hagan then referred to his notes and responded affirmatively.[2] Brewer argues that the witnesses were not testifying as to their personal knowledge, the deputy prosecutor was making himself a witness, and the deputy prosecutor was improperly refreshing the

---

[1] Brewer also very briefly argues that the evidence was inadmissible under Indiana Evidence Rule 403, which provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Brewer asserts, with little analysis, that Thomas's testimony was unduly prejudicial. We conclude that the evidence was highly relevant and that its probative value was not substantially outweighed by any prejudice.

[2] In his appellant's brief, Brewer refers to a different portion of Detective Hagan's testimony, where he is discussing a phone number associated with the defendants. However, Brewer erroneously claims that this testimony was the "second introduction of Martin's cell phone number." Appellant's Br. p. 26; *see* Tr. p. 369, 371-72.

witnesses' recollections. As for Sergeant Hess, Brewer argues that his testimony regarding Martin's phone number was hearsay.

[12]     Brewer did not object to Thomas, Detective Hagan, or Sergeant Hess testifying regarding Martin's cell phone number. We again note that the "[f]ailure to object at trial waives the issue for review unless fundamental error occurred." *Treadway*, 924 N.E.2d at 633. "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews*, 849 N.E.2d at 587. "The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." *Brown,* 929 N.E.2d at 207 (internal quotation omitted).

[13]     Martin's mother testified before Thomas, Detective Hagan, and Sergeant Hess. She stated:

> Q. Did your son have a phone at that time?
>
> A. Yes.
>
> Q. What was the number on that phone?
>
> A. It was ***-****.

Tr. p. 16. Brewer did not mention the testimony of Martin's mother in his appellant's brief. In his reply brief, he claims, without any analysis, that the

"admission of Martin's mother's testimony as to Martin's cell phone number is similarly fundamental error." Appellant's Reply Br. p. 7. "Appellants are not permitted to present new arguments in their reply briefs, and any argument an appellant fails to raise in his initial brief is waived for appeal." *Kelly v. Levandoski*, 825 N.E.2d 850, 857 n.2 (Ind. Ct. App. 2005), *trans. denied*. Further, Indiana Appellate Rule 46(A)(8)(a) requires that an appellant's arguments be supported by cogent reasoning. Because Brewer raises this new argument in his reply brief and fails to support it with cogent reasoning, his argument is waived. Waiver notwithstanding, there is no evidence that the cell phone number was not within Martin's mother's personal knowledge or was hearsay, and she did not need her memory refreshed to testify regarding the number. Martin's mother's testimony was properly admitted.

[14] Brewer argues that, without evidence of Martin's cell phone number, "the cell phone records were irrelevant and there was no way to connect Martin and Mr. Brewer by the records." Appellant's Reply Br. p. 8. We need not address whether the testimony of Thomas, Detective Hagan, and Sergeant Hess was properly admitted because, even if the admission was erroneous, no fundamental error occurred. Martin's mother properly testified regarding the cell phone number. Because the evidence at issue was cumulative of Martin's mother's testimony, no fundamental error occurred by the admission of the cell phone number through the testimony of Thomas, Detective Hagan, or Sergeant Hess. *See Wilkes v. State*, 7 N.E.3d 402, 405 (Ind. Ct. App. 2014) ("Because the

statements were cumulative of W.V.'s testimony, no fundamental error occurred from the admission of those statements.").

## Conclusion

[15] Fundamental error did not occur as a result of Thomas's testimony regarding Brewer and Tyson previously purchasing marijuana from Martin or as a result of Thomas, Detective Hagan, or Sergeant Hess testifying regarding Martin's cell phone number. We affirm.

[16] Affirmed.

Kirsch, J., and Robb, J., concur.